**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 07 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JACQUELYN K. TOKASHIKI, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> GEORGE FREITAS, JR., Individually and in his capacity as the Chief of Police, Kauai County, <br><br> Defendant-Appellant. | No. 04-16157 <br><br> D.C. No. CV-03-00065-ACK-LEK <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted November 18, 2005
Honolulu, Hawaii
Submission Withdrawn December 7, 2005
Resubmitted August 1, 2006

Before: HAWKINS, MCKEOWN, and CLIFTON, Circuit Judges.

Kauai Police Chief George Freitas ("Freitas") appeals the district court's denial of his summary judgment motion based on qualified immunity.

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

Jacquelyn Tokashiki ("Tokashiki"), while employed simultaneously as Freitas's secretary and as a secretary to the Kauai Police Commission ("Commission"), made statements to Freitas about his girlfriend, wrote a letter to the Commission regarding the impact of Freitas's refusal to obey the Commission's demands while on leave, and wrote a letter to the editor of *Honolulu Magazine* defending the Kauai Police Department ("KPD"). Tokashiki filed a complaint alleging that Freitas transferred and fired her because of these expressions thereby violating her right to free speech, as protected by the First and Fourteenth Amendments. Freitas moved for summary judgment based on qualified immunity, and the district court denied his motion.

We review de novo a district court's denial of summary judgment based upon a claim of qualified immunity. *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998). A district court's denial of summary judgment based on qualified immunity is subject to immediate appeal. *Id.* at 843 (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). But the scope of appellate jurisdiction is limited; this court does not review the district court's decision that material issues of fact exist for trial. *Id.* (citing *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995)).

Under this limited jurisdiction, we determine, viewing the facts and drawing the inferences in the light most favorable to the plaintiff, (1) if the defendant violated

a constitutional right; (2) if so, whether that right was clearly established; and (3) if so, whether the violation was a reasonable mistake of fact or law. *See Saucier v. Katz*, 533 U.S. 194, 200-202 (2001).

To determine whether Freitas violated Tokashiki's rights, we must first determine if her statements and letters were protected. To be protected, the employee must be speaking as a citizen; the expression is unprotected if it was made "pursuant to [his or her] duties" as an employee. *Garcetti v. Ceballos*, 126 S. Ct. 1950, 1960 (2006). An expression made by an employee speaking as a citizen is protected if it relates to a matter of public concern and if, under the *Pickering* balancing test, the employee's interest in expression outweighs the employer's interest in regulating the workplace. *Rivero v. City & County of San Francisco*, 316 F.3d 857, 865 (9th Cir. 2002); *see also Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). We conclude that Tokashiki's statements regarding Freitas's girlfriend were not protected, that her letter to *Honolulu Magazine* was protected, and that the record is insufficient to determine whether her letter to the Commission was protected.

The record cannot support a determination whether Tokashiki, in her August 27, 2001 letter to the Commission, was speaking as a citizen or an employee. The

district court must conduct further inquiry into whether Tokashiki's letter was a protected expression in light of the Supreme Court's recent decision in *Ceballos*.

Even if Tokashiki's December 2000 comments regarding Freitas's girlfriend were made as a citizen and not as an employee, they are not a matter of public concern. An expression addresses a matter of public concern when it relates to an issue of "'political, social, or other concern to the community.'" *Brewster v. Bd. of Educ.*, 149 F.3d 971, 978 (9th Cir. 1998) (quoting *Connick*, 461 U.S. at 146). Just because some members of the public might have frowned upon Freitas's living arrangement does not make it a matter of public concern, particularly where his conduct was not illegal and had no bearing on his ability to fulfill his duties.

Tokashiki's letter in the January 2002 edition of *Honolulu Magazine*, however, is protected. In October 2001, *Honolulu Magazine* published an article entitled "Kaua'i Chief Beseiged," which reported on the investigation into Freitas and other "scandals" faced by the KPD. Tokashiki replied to the article, rebutting some of its assertions. The letter, published in January 2002, did not comment on the charges against Freitas. *Ceballos* specifically identifies a letter to a news publication as one example of how a public employee may speak as a citizen. 126 S. Ct. at 1961.

Freitas asserts that, because the letter did not expose any wrongdoing by him, it is not related to a matter of public concern. No case suggests, however, that the First Amendment only protects statements against one's boss. To the contrary, expressions that address issues about which information is needed to allow citizens to make "'informed decisions about the operation of their government'" receive the highest degree of First Amendment protection. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). Tokashiki's letter to the magazine fit this description because it was part of a civic debate regarding the functioning and integrity of the KPD.

The First Amendment does not protect expressions, even those related to a matter of public concern, unless this court also determines that the employee's interest in the speech outweighs the government's interests in promoting workplace efficiency and avoiding workplace disruption. *Rivero*, 316 F.3d at 865. We consider whether the statement "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering*, 391 U.S. at 570-73).

"The employer bears the burden of proving that the balance of interests weighs in its favor." *Johnson v. Multnomah County*, 48 F.3d 420, 426 (9th Cir. 1995). The employer must show greater disruption when the speech is at the core of First Amendment protection, the speech is truthful, or it is directed at a large audience. *See id.; Brewster*, 149 F.3d at 981. Likewise, an employer is given wider deference when the speech is at the edge of First Amendment protection, the speech is false, a smaller audience is targeted, or a close working relationship is at stake. *See Johnson*, 48 F.3d at 426; *Brewster*, 149 F.3d at 981.

In this case, the only workplace disruption asserted by Freitas is the erosion of the close working relationship between him and Tokashiki. A private secretary is a person with whom an employer works closely, contacts frequently, and must trust. Thus, Freitas has made a very limited showing of disruption, although in an area in which he enjoys some degree of deference.

Tokashiki's defense of the KPD in a widely published periodical is at the core of First Amendment protection and demands a strong showing of disruption. It is difficult to see how Tokashiki's *defense* of the KPD could in any way erode Freitas's trust in her. Freitas states that he felt it was inappropriate for her to have written anything in response to the article. But since Tokashiki's letter was positive in language, tone, and substance, and since she does not seem to have violated any

6

policy or rule in submitting the letter, the disruption it caused to Freitas's and Tokashiki's close working relationship has to be considered minimal. Thus, the *Pickering* balancing test tilts very strongly in favor of First Amendment protection.

Nonetheless, Freitas is entitled to qualified immunity unless the constitutional right was clearly established at the time of the alleged violation. A right is "clearly established" when the boundaries of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quotations and citations omitted). To determine if the boundaries were sufficiently clear, this court turns again to the *Pickering* balancing test. *Moran*, 147 F.3d at 845. It is rare that a prior case applying the *Pickering* test so closely matches the facts of the case in question that case law can be said to establish clear boundaries. *Id.* at 847. However, this court has held that the boundaries of a right are sufficiently clear when the *Pickering* balancing test weighs heavily in favor of the employee, as it did in this case. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 867 (9th Cir. 1999).

To successfully establish that her rights were violated, Tokashiki must show not only that her speech was constitutionally protected, but also that there was an adverse employment decision and that her protected expression was a substantial or motivating factor for the adverse decision. *Coszalter*, 320 F.3d at 973 (citing *Bd. of*

*County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996)). Neither party contests the district court's finding that Tokashiki's transfer and dismissal were adverse employment decisions. Furthermore, the district court found that a genuine issue of material fact existed as to whether her protected expression was a substantial or motivating factor for the adverse decision. This finding is beyond the review of this court on interlocutory appeal. *Moran*, 147 F.3d at 843 (citing *Johnson*, 515 U.S. at 319-20).

Because Tokashiki's letter to the magazine had First Amendment protection, her rights were clearly established, there was a genuine issue of material fact as to whether Freitas had violated those rights, and Freitas offers no reasonable error of fact or law that could excuse a violation of Tokashiki's rights, we affirm the district court's decision to deny Freitas's motion for summary judgment on that ground. To the degree that the district court's decision was founded on a belief that Tokashiki's comments regarding Freitas's girlfriend were protected, we reverse. We remand to the district court for a determination of whether Tokashiki's August 27, 2001 letter to the Commission was protected in light of *Ceballos*, and for further proceedings consistent with this decision.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.** Each party shall bear its own costs on appeal.

8

A TRUE COPY   8/29/06
ATTEST
CATHY CATTERSON
Clerk of Court
by:_____
Deputy Clerk
This certification does constitute the mandate of the court.