# ORIGINAL

CLAYTON C. IKEI
Attorney at Law
A Law Corporation

CLAYTON C. IKEI      1260
JERRY P.S. CHANG     6671
1440 Kapiolani Boulevard, Suite 1203
Honolulu, Hawaii 96814
Telephone No. (808) 533-3777
Facsimile No. (808) 521-7245
E-mail: CCIOffice@hawaii.rr.com

Attorneys for Plaintiff
JACQUELYN K. TOKASHIKI

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 7 2007

at ____ o'clock and ____ min. ___ M
SUE ____, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACQUELYN K. TOKASHIKI,<br><br>        Plaintiff,<br><br>    v.<br><br>GEORGE FREITAS, Individually<br>and in his Capacity as the<br>Chief of Police, County of<br>Kauai, JOHN DOES 1-5 and JANE<br>DOES 1-5,<br><br>        Defendants. | ) CIVIL NO. 03-00065 ACK LEK<br>)<br>) PLAINTIFF'S MEMORANDUM IN<br>) OPPOSITION TO DEFENDANT GEORGE<br>) FREITAS' MOTION FOR SUMMARY<br>) JUDGMENT; CERTIFICATE OF<br>) SERVICE<br>)<br>)<br>)<br>) **DATE:** February 5, 2007<br>) **TIME:** 9:30 a.m.<br>) **JUDGE:** Alan C. Kay<br>)<br>) **Trial Date:** April 24, 2007 |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION
### <u>TO DEFENDANT GEORGE FREITAS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff JACQUELINE K. TOKASHIKI, by and through her

counsel, hereby submits her Memorandum in Opposition to Defendant

George Freitas ("Freitas") Motion for Summary Judgment filed on

November 22, 2006.

## TABLE OF CONTENTS

I.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   Summary Judgment Standard . . . . . . . . . . . . 6

     B.   Violation of First Amendment Rights, Generally  . . . 7

     C.   Plaintiff's Transfer from Being the Police Chief's
          Secretary to the A&T Bureau, and Subsequent Removal
          Constitute Adverse Employment Actions . . . . . . . . 9

     D.   Law of the Case Should Apply as this Court's Already
          Determined that Plaintiff's Transfer and Removal Were
          Adverse Employment Actions . . . . . . . . . . . . 16

     E.   The State Circuit Court's TRO Stayed the Termination of
          Plaintiff Until it Was Lifted by the Granting of
          Defendants' Summary Judgment Motions . . . . . . . 18

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

### CASES

Allen v. Iranon, 283 F.3d 1070 (9th Cir. 1999) . . . . . . . . 8

Allen v. Scribner, 812 F.2d 426 (9th Cir. 1987) . . . . . . 9-10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed. 2d 202, 106 S.Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . 7

Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668, 135 L.Ed. 2d 843, 116 S.Ct. 2342 (1996) . 8

Bowman v. Pulaski County Special School District, 723 F.2d 640 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 11-12

Celotex Corp. v. Catrett, 477 U.S. 317, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . 7

Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003) . . 8-9

Diruzza v. County of Tehama, 206 F.3d. 1304 (9th Cir. 2001), cert. denied, 531 U.S. 1035, 148 L.Ed. 2d 533, 121 S.Ct. 624 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fisher v. Pharmacia & Upjohn, 225 F.3d 915 (8th Cir. 2000) . 13

Forsyth v. City of Dallas, 91 F.3d 769 (5th Cir., 1996), cert. denied, 522 U.S. 816, 139 L.Ed. 2d 26, 118 S.Ct. 64 (1997) . 12

Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951, 164 L.Ed. 2d 689 (2006) . . . . . . . . . . . . . . . . . . . . . . . 10

Hufford v. Mcenaney, 249 F.3d 1142 (9th Cir. 2001) . . . . . . 8

Leary v. Daeschner, 349 F.3d 888 (6th Cir. 2003) . . . . . 10-11

McGill v. Board of Education, 602 F.2d 774 (7th Cir., 1979) . 12

Matsushita Electronic Industries. Co. v. Zenith Radio Corp., 475 U.S. 574, 89 L.Ed. 2d 538, 106 S.Ct. 1348 (1986) . . . . . . . 7

Meyers v. Nebraska Health & Human Services, 324 F.3d 655 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 12-14

Moore v. California Institute of Technology Jet Propulsion Laboratory, 275 F.3d 838 (9th Cir. 2002) . . . . . . . . . . . 9

Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) . . . . . . . . 9

Tokashiki v. Freitas, 2006 U.S. App. LEXIS 20406, * (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

United States v. Alexander, 106 F.3d 874 (9th Cir. 1997) . 16-17


**RULES AND REGULATIONS**
Fed. R. Civ. P. 56 (c) . . . . . . . . . . . . . . . . . 6-7

I.    STATEMENT OF THE CASE

Plaintiff began her employment as the Private Secretary to the Police Chief, Deputy Chief, and Police Commission for the County of Kauai on February 1, 1980.  Chang decl. ¶ 2; Ex. **C** ¶ 14 (Stipulation By and Between Plaintiff and Defendants George Freitas and County of Kauai; filed June 5, 2002 in the Circuit Court of the Fifth Circuit, State of Hawaii.)

Freitas was the Chief of the Kauai County Police Department during the relevant time period.

By action taken on August 10, 2001, the Kauai Police Commission formally placed Freitas on paid leave, effective August 13, 2001, pending an investigation of charges of misconduct made against Freitas by two police officers, Alvin Seto and Mel Morris.  Freitas was further directed to surrender department-issued equipment, including weapons, his badge and his identification.  Id. ¶ 15.

On January 7, 2002, Freitas returned to work as the Chief of Police and verbally directed Plaintiff to surrender her office key and to report to the Administrative and Technical Bureau ("A&T Bureau") with the Police Department.  Id. ¶ 16.

On April 26, 2002, Freitas delivered a letter to Plaintiff dated the same date which stated in part:

> I thank you for the loyal service you have provided to me and my predecessors.  I have determined, however, that it is time to make a change in personnel and seek someone else

> to serve as the Chief's private and
> confidential secretary.  As such, you are
> being notified that your employment will be
> terminated effective 31 May 2002.

Ex. **D** (Ex. "J" Parties' Stipulation).

Although Freitas terminated Plaintiff's employment,

Plaintiff continued her work for the Police Commission.  She was

unable to work at the county offices after December 2002 but

continued working at home until February 2003. Tokashiki decl. at

¶¶ 16-17.

On May 14, 2002, Plaintiff filed her Verified Complaint for

Declaratory Relief and Injunctive Relief and Damages against

Freitas and Kauai County in the Circuit Court of the Fifth

Circuit Court, State of Hawaii ("State Court").

On May 16, 2002, Plaintiff filed a Motion for Temporary

Restraining Order ("TRO") with the State Court. On June 3, 2002,

the State Court issued its Order granting the TRO.  Chang Decl. ¶

4; Ex. **E**.  The Order stated in part that Freitas and the County

was prohibited from "[g]iving effect to the termination of

Plaintiff's employment effective May 31, 2002 pursuant to the

letter of April 26, 2002..." and  "[d]enying Plaintiff any and

all benefits and entitlements, including salary, sick leave,

disability, worker's compensation and retirement benefits

accruing to Plaintiff as Private Secretary."  Ex. **E** at 3, ¶¶ 1

and 4.  The Order also directed the parties to file stipulations

of basic facts and joint exhibits ("Stipulation") by June 12,

2002. The Order further stated that it would continue in full force and effect until July 3, 2002, or "... such other time and date to which the matter might be continued." Ex. **E** at 3 last para.

On June 5, 2002, Plaintiff, Defendants George Freitas, and Kauai County filed their Stipulation. Ex. **C**. Paragraphs 16 and 17 of the Stipulation stated:

> 16. On the morning of January 7, 2002, the Chief returned to service as Chief of Police of the County of Kauai, and verbally directed Plaintiff to surrender her office key and report to the Administrative and Technical Bureau within the Kauai Police Department.

> 17. On the morning of April 26, 2002, the Chief delivered the letter of terminating Plaintiff's employment (<u>See</u> Exhibit "J")[1].

In February 2003, Plaintiff was terminated in her employment as the Police Commission's Secretary. Tokashiki decl. at ¶ 17.

On October 15, 2003, the State Department of Labor, Disability Compensation Division ("DOL") determined that Plaintiff sustained a work-related injury on January 7, 2002. Tokashiki decl. ¶ 20; Ex. **A**.

On February 10, 2003, Plaintiff filed this federal lawsuit alleging under Count I that Defendants' actions violated her right to due process of law under the Fifth and Fourteen Amendments to the United States Constitution, and under Count II,

---

[1] Ex. "J" to the stipulation is appended to Plaintiff's Separate and Concise Statement as Ex. **D**.

that her removal and termination was in retaliation for her right to free speech under the First and Fourteenth Amendments of the United States Constitution. The Court granted summary judgment in Freitas' favor as to the Due Process claim in a prior summary judgment motion.

On February 25, 2003, Freitas filed his Motion for Partial Summary Judgment ("MPSJ") on Counts I, II, II (Second Count II), III, IV, V, VII, and VII of the Verified Complaint in the State Court. On March 3, 2003, Kauai County filed a joinder to Freitas' motion (collectively "Defendants' MPSJ"). As part of Defendants' MPSJ, they moved Defendants moved to dissolve the TRO. Chang decl. ¶ 5; Ex. **F** at 11, last sentence.

On June 17, 2003, the State Court filed its Order granting the Defendants' MPSJ as to Freitas. Chang decl. ¶ 6 ; Ex. **G**.

On December 17, 2003, Freitas filed in this Court, a Motion for Summary Judgment as to Count I (Due Process) and Count II (Violation of Right of Freedom of Speech) of Plaintiff's Federal Complaint. Plaintiff filed her opposition memorandum on January 30, 2004. The Court heard oral arguments on February 17, 2004.

On March 9, 2004, the Court filed its Order Denying Freitas' Motion for Summary Judgment. In summary, the Order granted Freitas summary judgment as to Due Process Claim, but denied summary judgment as to Plaintiff's Free Speech Claim. Chang decl. ¶ 7; Ex. **H** at 44-45). Of note, the Order stated in part:

> The Court finds that under Ninth's Circuit's
> "reasonably likely to deter" test, Defendant
> Freitas' transfer and subsequent dismissal of
> Plaintiff are each adverse employment actions
> for purposes of this case . . .  Accordingly,
> the Court finds that Plaintiff satisfies the
> second element of her prima facie case.

Id. at 29.

On August 7, 2006, the Ninth Circuit filed its Memorandum

Opinion in this matter regarding Freitas' appeal of this Court's

denial of his summary judgment motion based on qualified

immunity.  Tokashiki v. Freitas, 2006 U.S. App. LEXIS 20406, *

(9th Cir. 2006).  The Memorandum Opinion stated in part,

"[n]either party contests the district court's finding that

Tokashiki's transfer and dismissal were adverse employment

decisions." Id. at *9.

Freitas filed the instant Motion for Summary Judgment

contending that Plaintiff was not subject to any "adverse

employment action" by Freitas, and therefore has no basis to

support her First Amendment claim.

## II.  ARGUMENT

### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue of

material fact and that the moving party is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56 (c).  In applying this

standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Matsushita Electronic Industries. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L.Ed. 2d 538, 106 S.Ct. 1348 (1986).

Once the moving party has carried its burden of indicating that there is no genuine issue of material fact, Rule 56(c) requires the nonmoving party to go beyond the pleadings by affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986). The nonmoving party must make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed. 2d 202, 106 S.Ct. 2505 (1986).

**B.   Violation of First Amendment Rights, Generally**

Public employees are protected from retaliation for the exercise of their U.S. Constitution First Amendment rights. A state may not condition public employment on an employee's exercise of his or her First Amendment rights. However, an

-7-

employee's rights are not absolute and must be balanced against the role of government as an employer. <u>Diruzza v. County of Tehama</u>, 206 F.3d. 1304 (9th Cir. 2001), <u>cert. denied</u>, 531 U.S. 1035, 148 L.Ed. 2d 533, 121 S.Ct. 624 (2000); <u>See also</u>, <u>Hufford v. Mcenaney</u>, 249 F.3d 1142 (9th Cir. 2001).  (An employer who discharges an employee in retaliation for legitimate whistleblowing does so in violation of the employee's clearly established First Amendment rights.)

In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took "adverse employment action"; and (3) that his or her speech was a "substantial or motivating" factor for the adverse employment action. <u>Coszalter v. City of Salem</u>, 320 F.3d 968 (9th Cir. 2003).  If the employee has met the required showing, the burden then shifts to the defendant, who must show by a preponderance of the evidence that he or she would have taken the same actions absent the protected conduct. <u>Allen v. Iranon</u>, 283 F.3d 1070 (9th Cir. 1999); <u>Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr</u>, 518 U.S. 668, 135 L.Ed. 2d 843, 116 S.Ct. 2342 (1996).

C.    **Plaintiff's Transfer from Being the Police Chief's Secretary to the A&T Bureau, and Subsequent Removal Constitute Adverse Employment Actions**

To constitute an adverse employment action, a government's act of retaliation need not be severe and it need not be of a certain kind.  Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden.  Coszalter supra.

Moreover, in the Ninth Circuit, an adverse employment action under a Section 1983 reprisal claim is made if the plaintiff establishes that defendant's actions were "reasonably likely to deter [employees] from engaging in protected activity under the First Amendment."  Coszalter, 320 F.3d at 976; citing, Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) and Moore v. California Institute of Technology Jet Propulsion Laboratory, 275 F.3d 838 (9th Cir. 2002).

Transfers in retaliation for protected speech may violate the U.S. Constitution.  In Allen v. Scribner, 812 F.2d 426 (9th Cir. 1987), appellant, a state entomologist sued his state employer alleging violations of his civil rights under Section 1983 and the First Amendment.  Appellant alleged that he was removed from the Mediterranean Fruit Fly Eradication Project and reassigned to another position and harassed due to his remarks to the press about an alleged breach of public trust by the project management.  Id. at 428.

-9-

With respect to whether appellant's transfer constituted an adverse employment action, the Ninth Circuit in Allen v. Scribner stated that a transfer traceable to speech-related activity is properly the subject of First Amendment challenge, even though the transfer results in no loss of pay, seniority, or other benefit. Id. at 435. Moreover, a transfer itself can be an "effective means of chilling constitutionally protected speech." Id.; see also, Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951, 1956, 164 L.Ed. 2d 689, 697 (2006). (Employee, a deputy district attorney, alleged he was subject to reprisal by employer in violation of Section 1983 when he wrote a memorandum explaining his concerns regarding alleged inaccuracies in an affidavit used to obtain a search warrant in a pending criminal case. Employee claimed that he was subjected to a series of retaliatory employment actions, including reassignment from his calendar deputy position to a trial deputy position, transfer to another courthouse, and denial of a promotion.)

In Leary v. Daeschner, 349 F.3d 888 (6th Cir. 2003), appellants, teachers at a public elementary school, alleged they were transferred by the superintendent in retaliation for exercising their First Amendment rights in speaking out about problems within the school. The Sixth Circuit in Leary noted that the superintendent conceded that an involuntary transfer to another school within the district would have a sufficient

-10-

chilling effect to qualify as an adverse action under the First
Amendment retaliation analysis. Id. at 901.

It also stated:

> Clearly, involuntary transfers from one job
> to another is action that would likely chill
> a person of ordinary firmness from continuing
> to engage in constitutionally protected
> activity. **Moreover, we previously determined
> that an involuntary job transfer, where
> neither grade nor salary is affected,
> qualifies as adverse action for purposes of
> the First Amendment.** Here, evidence in the
> record suggests that being transferred from
> one school in the district to another causes
> Plaintiffs to suffer harm to their
> reputations, while the transfers also remain
> notations in their files for a year. The act
> of transferring Plaintiffs to another school
> additionally can negatively impact their
> daily experiences, including their commute,
> coworker friendships, and community
> relationships.

Id. at 901 (citations omitted, emphasis added).

In Bowman v. Pulaski County Special School District, 723
F.2d 640 (8th Cir. 1983), the Court determined that an
involuntary transfer of assistant coaches who spoke out against
the corporeal punishment imposed upon students by their
supervisory coach were intended to be disciplinary actions
designed to punish the assistant coaches for speaking out. The
Court so found despite noting that both coaches had received
slight salary increases as a result of their involuntary
transfers; however, the Court also found that both coaches were

required to commute longer distances to work and to teach

subjects which were not their normal subjects of teaching.

Similarly, in McGill v. Board of Education, 602 F.2d 774

(7th Cir., 1979), the Court held that an involuntary transfer to

another school, was retaliation stating:

> We hold that such retaliation can take the
> form of a retaliatory transfer as well as a
> retaliatory discharge.  It is no answer to
> say that she had a right to engage in the
> constitutionally protected speech after her
> transfer, since even a discharged teacher has
> the right to continue to speak out.  The test
> is whether the adverse action taken by the
> defendants is likely to chill the exercise of
> constitutionally protected speech.  **The
> chilling effect can be accomplished through
> an unwanted transfer as well as through
> outright discharge.**

Id. at 780 (emphasis added).

In Forsyth v. City of Dallas, 91 F.3d 769 (5th Cir., 1996),

cert. denied, 522 U.S. 816, 139 L.Ed. 2d 26, 118 S.Ct. 64 (1997),

the Court held that police detectives sustained harm when they

were transferred to the uniformed patrol positions after they

disclosed illegal wiretaps to the press even though they had

sustained no reduction in pay; the Court based its ruling on its

findings that patrol positions were less desirable than detective

positions.

In Meyers v. Nebraska Health & Human Services, 324 F.3d 655

(8th Cir. 2003), plaintiff was employed as a Protection and

Safety Worker where she monitored children for the agency.  In a

certain case, her opinion of the best placement for two brothers
living with a foster family differed from that of the agency.
At a court hearing, plaintiff told the court the agency's
position, and at the court's insistence, her differing opinion.
Shortly thereafter, plaintiff's supervisors changed her job
duties from ongoing cases to "intake" duties.  Id. at 657-658.

Although the duties of ongoing and intake workers differed,
plaintiff retained the same pay rate, benefits and job title, and
was not reprimanded orally or in writing, and remained in the
same office.  Nevertheless, plaintiff contends that the change in
duties was a demotion in reprisal for her testimony in the
brothers' placement, pursuant to Section 1983.  Id.

The Eight Circuit in Meyers noted that a transfer or
reassignment may rise to the level of an adverse employment
action if it is "a significant change in working conditions."
Id. at 660 (quoting, Fisher v. Pharmacia & Upjohn, 225 F.3d 915,
919 (8th Cir. 2000)).  In Meyers, plaintiff's tangible employment
terms and conditions — her pay and benefits — did not change when
she was reassigned.  However, whether the changes in intangible
employment conditions were significant or material remains a
disputed material fact.  Id. at 660.

When plaintiff was reassigned, her supervisors told her that
her intake duties were not a "full load," so they needed to find
other work for her to do.  Moreover, before plaintiff's

-13-

reassignment, intake duties were handled by a switchboard receptionist and a case aide with far less education, training, and experience than plaintiff. This evidence of a considerable downward shift in skill level required to perform her new job responsibilities, along with evidence of a reduced work load, and that her supervisors had to find other "tasks" for her to do were sufficient to support a finding that plaintiff's reassignment was a significant and material change in her employment condition. Id.

Here, Plaintiff was subjected to an adverse employment action when, upon Freitas' return from administrative leave on January 7, 2002, he removed her as the Chief's Secretary, and subsequently issued her termination letter on April 26, 2002.

When Plaintiff was transferred to the Administrative and Technical ("A&T") Bureau of the Kauai Police Department, she no longer performed any tasks for the Chief of Police and she no longer functioned in any way as the secretary for the Chief of Police. Tokashiki decl. ¶ 4.

The timing and manner with which Plaintiff was transferred were clearly related to her protected activity. While Freitas was reassigning Plaintiff, the copy of Honolulu magazine in which Plaintiff's letter to the editor appeared and which is one of the protected activities in which she engaged, was visible on Freitas' desk and he pointed at it as he told her about the

-14-

reassignment.  Tokashiki decl. ¶ 3.  Clearly a reassignment so unmistakably related to Plaintiff's First Amendment rights was sufficient to deter other persons from engaging in similar activities.

Plaintiff's declaration provides testimony about the conditions under which she was subjected after her transfer. She was moved to an office which did not have the equipment necessary for her to carry out her duties as secretary to the Kauai Police Commission.  That fact was obvious to and was noted by the persons with whom she worked.  Tokashiki decl. ¶¶ 4-7.

Freitas continued to subject Plaintiff to retaliatory actions when the Kauai Police Department moved into its new headquarters building.  Plaintiff was not provided with a work station.  She finally was placed in a room converted from a library, was obliged to bring her old desk with her and did not have computer access at her work station for several months. Tokashiki decl. ¶¶ 11-12.

Lastly, Freitas assigned Plaintiff tasks which were properly those of the A&T clerk.  Those tasks, were well below Plaintiff's skill level.  Plaintiff had worked as the private secretary to the highest-ranking member of the police department for twenty years.  She suddenly found herself doing clerical work; in effect, since the clerk assigned to do those tasks had been transferred to the Chief's office, she found herself trading jobs

with the A&T Clerk.  Moreover, those clerical tasks and the conditions under which Freitas required her to perform them made it unnecessarily difficult for Plaintiff to do her work as secretary to the Kauai Police Commission.  Tokashiki decl. ¶¶ 13-15.

Plaintiff was being punished by being reassigned to work below her skill level.  By requiring that she perform that work in public view rather than in a private office (Tokashiki decl. ¶ 14), Defendant Freitas was sending a clear message that anyone who took actions of which he did not approve would be punished.

Lastly, Plaintiff's reassignment to the A&T Bureau was not temporary.  She was assigned to that Bureau until Defendant terminated her on April 26, 2002 — Secretary's Day; yet another attempt by Freitas to send a clear message.  There was no possibility that she would return to her previous position and she, in fact, did not do so.  Tokashiki decl. ¶ 4, 8-9.

Thus, Plaintiff suffered an adverse employment action.

**D.   Law of the Case Should Apply as this Court's Already Determined that Plaintiff's Transfer and Removal Were Adverse Employment Actions**

Under the "law of the case" doctrine, a court generally is precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.  The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion.  <u>United States v. Alexander</u>,

-16-

106 F.3d 874 (9th Cir. 1997).  A court may have discretion to
depart from the law of the case where:  1) the first decision was
clearly erroneous; 2) an intervening change in the law has
occurred; 3) the evidence on remand is substantially different;
4) other changed circumstances exist; or 5) a manifest injustice
would otherwise result.  Failure to apply the doctrine of the law
of the case absent one of the requisite conditions constitutes an
abuse of discretion.  Id. at 876.

     Here, as noted above, this Court denied Freitas' previous
motion for summary judgment as to Plaintiff's First Amendment
claim.  In particular, the Court determined that Plaintiff
established a prima facie case of retaliation for her First
Amendment right including that Freitas' transfer and subsequent
dismissal of Plaintiff are each adverse employment actions for
the purpose of this case.  Chang Decl. ¶ 7; Ex. **H** at 28-29.

     Additionally, the Ninth Circuit noted in its Memorandum
Opinion that neither party contested this Court's finding that
Plaintiff's transfer and dismissal were adverse employment
decisions.  Tokashiki, 2006 U.S. App. LEXIS at *9.

     Thus, as that this Court has already determined that
Plaintiff's transfer and dismissal constitute adverse employment
actions as to her First Amendment claim, Plaintiff contends that
the Court should reject Freitas' latest contention that

-17-

Plaintiff's transfer and dismissal were not adverse employment actions, under the law of the case doctrine.

### E.    The State Circuit Court's TRO Stayed the Termination of Plaintiff Until it Was Lifted by the Granting of Defendants' Summary Judgment Motions

As noted above, Plaintiff's employment was terminated effective May 31, 2002. Plaintiff's employment record demonstrates that she was in actuality terminated. Defendant attached Plaintiff's Kauai Police Department Employment & Change in Status Record to his latest motion for summary judgment as Exhibit "J." Defendant's Exhibit "J" is a summary of actions taken in Plaintiff's employment. The actual documents by which the actions were effected are attached to Plaintiff's Separate and Concise Statement of Facts as Exs. **K**, **L** and **M**.

Exhibit **K** was signed May 10, 2002 by George Freitas identified as the Appointing Authority Approval. It was received May 20, 2002 by the County of Kauai Personnel Services Department (as evidenced by the "Received" stamp) and was Certified by the Department of Personnel Services Director on May 21, 2002. The "Remarks" block clearly relates Plaintiff's dismissal to "Chief George Freitas' letter dated 04/26/2002." The action is noted in Def.'s Ex. "J" as well.

Plaintiff moved for a TRO which the Circuit Court heard oral arguments on May 23, 2002 two days after her "dismissal," which was to be effective May 31, 2002, had been certified. The

Circuit Court granted the TRO and filed the written order on June 3, 2002.

The TRO is specific in what it granted. The order states:

> IT IS HEREBY ORDERED that Defendants GEORGE FREITAS and COUNTY OF KAUAI are prohibited restrained and enjoined from doing any of the following:
>
> 1. **Giving effect** to the termination of Plaintiff's employment effective May 31, 2002 pursuant to the letter of April 26, 2002 issued by Defendant GEORGE FREITAS.

Ex. **D** at 2-3.

Exhibit **L**, dated June 3, 2002, the same date as the TRO, simply corrects the terminology for Plaintiff's separation from employment from "dismissal" to "termination." (see the "Remarks" block").

Exhibit **M**, also dated June 3, 2002 implements the Court order as evidenced in the "Remarks" block.

In Freitas' First Motion for Partial Summary Judgment ("1st MPSJ") to the Circuit Court, he moved to have the TRO dismissed. The Circuit Court granted Freitas' 1st MPSJ, filed its written order on June 17, 2003, the TRO was effectively lifted, and Plaintiff's termination was allowed to go into effect. Chang decl. ¶¶ 5-6, Exs. **F** at 11 and **G**; Tokashiki decl. ¶ 19.

Throughout all of these actions, Plaintiff occupied Position E24 as Private Secretary to the Chief of Police. There is no payroll certification that indicates that she was at any time

transferred to another position.  Plaintiff indicates that she
never received any such paperwork which she should have done had
she actually been transferred to another position with the
County.  Tokashiki decl. ¶ 24.

Plaintiff states that there was discussion of moving her to
another position as a means of settling her case; however, Brian
Baptiste was elected as Mayor during the settlement discussion
and replaced Maryanne Kusaka.  The tentative offer which Mayor
Kusaka's administration had reached fell through and Plaintiff
did not accept the position which the Baptiste administration
made to her and no transfer occurred.  Tokashiki decl. ¶ 18.

Plaintiff, therefore, remained in her position as secretary
to the Chief, was not answerable to the Mayor and Defendant
Freitas' decision to terminate her was solely at his discretion.
That is precisely the position the County adopted in responding
to Plaintiff's former counsel.  Ex. **N** at 2.

In October 2003, the State Department of Labor and
Industrial Relations ("DLIR") approved Plaintiff's claims for
workers compensation related to her reassignment on January 7,
2002 and the subsequent termination.  Tokashiki decl. ¶ 20, Ex.
**A.**  The employer denied liability on May 21, 2002 and Plaintiff
made her worker's compensation claim on June 19, 2002.  Ex. **A** at
1, second para. in "FINDINGS OF FACT."

-20-

In March 2004, Plaintiff learned from her attorney representing her on the workers' compensation matter that $15,389.13 had been paid to the County to reimburse the County for payments it had been making to her for accrued sick leave under the Workers' Compensation Act. Plaintiff authorized the workers' compensation insurance carrier to directly reimburse the County. Plaintiff's understanding of her employment status at the time was that she was being paid under workers' compensation and not as a salaried employee of the County. Tokashiki decl. ¶ 21.

Plaintiff's understanding as to the source of her income is consistent with DLIR award at Ex. **A** and the TRO which enjoined Defendants Freitas and County of Kauai from "[d]enying Plaintiff any and all benefits and entitlements including salary, sick leave, disability, **worker's compensation** and retirement benefits...." Ex. **E** at 3, ¶ 4 (emphasis added).

Freitas also contends that Plaintiff represented to her bank that she was still an employee of the County. However, Plaintiff states that she advised American Savings Bank in May 2004, when she applied for an increase in her equity loan, that her employment from the County was terminated and that she was collecting sick leave. Diana Simao, Branch Manager for American Savings Bank, wrote a letter dated May 13, 2004, which

memorialized the information that Plaintiff provided to her. Tokashiki decl. ¶ 22, Ex. **B**.

Therefore, Plaintiff contends that the evidence is clear that she was transferred and removed by Freitas, and that since her removal from the Chief's Office, Plaintiff has been receiving workers' compensation and not her regular salary from the County. Moreover, Plaintiff's bank acknowledged that Plaintiff did advise it of her termination.

**III.  CONCLUSION**

Therefore, for the foregoing reasons, Plaintiff requests that the Court deny Defendant George Freitas' Motion for Summary Judgment.

DATED: Honolulu, Hawaii, January 17, 2007.

CLAYTON C. IKEI
JERRY P.S. CHANG

Attorneys for Plaintiff
JACQUELYN K. TOKASHIKI