IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JACQUELYN K. TOKASHIKI,      ) CIVIL NO.  03-00065 ACK LEK
                               ) DECLARATION OF JACQUELYN K.
           Plaintiff,    ) TOKASHIKI
                               )
           v.                  )
                               )
GEORGE FREITAS, Individually  )
and in his Capacity as the    )
Chief of Police, County of    )
Kauai, JOHN DOES 1-5 and JANE )
DOES 1-5,                   )
                               )
           Defendants.   ) 

## DECLARATION OF JACQUELYN K. TOKASHIKI

I, JACQUELYN K. TOKASHIKI, hereby declare under penalty of perjury, that the following is true and correct:

1.      I am the Plaintiff in the above-entitled lawsuit.  All statements made herein, unless otherwise noted, I make from my own personal knowledge and belief.

2.      I have suffered many adverse employment actions after I was transferred from my position as secretary to the Chief of Police by George Freitas ("Freitas").

3.      Freitas returned to work on the morning of January 7, 2002, after having been on suspension for about four months pending investigation of complaints that had been made against him.  One of the first things he did was to call me into his

office to tell me that I should never have written a response to the Honolulu Magazine article, the Honolulu magazine was on his desk and he pointed to it as he spoke.  He then told me to remove my personal belongings from the Chief's Office, turn in the office keys and report to Acting assistant Chief K.C. Lum ("Lum") in the Administrative and Technical Bureau ("A&T") of the Kauai Police Department. Freitas even told me to go home from work.  He spoke to me in an angry tone of voice and his hands were shaking.

4.        I was transferred to a small office that was stuffed with cardboard boxes that contained files from the Police Commission.  It had an old 1950s-style metal desk with drawers that were very hard to open.  There was no computer at the desk; I had to bring my computer from the Chief's office because the Police Commission files were on that computer and were needed to complete work for the Commission.  After that transfer, I never did work again as Secretary to the Chief of Police.

5.        Freitas made my former assistant, Gayle Kuboyama ("Kuboyama"), his secretary.  Kuboyama had been assisting me with doing minutes for Police Commission meetings; however, Freitas no longer permitted her to assist me and I had to do all the work for the Police Commission.

2

6.      The small office I had been moved to was the former A&T Assistant Chief's office.  It was very small, cramped and messy and it was like working in a closet.  The Police Commission files were stuffed in large cardboard file boxes piled three high.  The files had been kept in metal file cabinets in the Chief's office, but there was no room in this office for filing cabinets, so I had to move the heavy boxes around any time I needed a file or office supplies for the Police Commission that were also kept in cardboard boxes.  The one file cabinet in the room was filled with the A&T Assistant Chief's files and any time he needed a file I had to leave my desk so he could get into the cabinet.

7.      I was required to meet with employees, police commissioners and members of the public as part of my work for the Police Commission.  They would make comments to me about how deplorable the office was.

8.      After Freitas replaced me with Kuboyama, I was essentially working in limbo.  I did not have a definite job.  I did not have a position description.  I felt ridiculed, demoralized and depressed and was anxious that Freitas would fire me.  While I was working in A&T, Freitas would look through

the window in the door of the small office where I had been moved and laugh at me.

9.      On April 26, 2002, Secretary's Day, I received my termination letter from Freitas.  The letter specified that the termination was to become effective May 31, 2002.

10.      At that time, I was represented by attorney Lorna Nishimitsu.  She filed a complaint on my behalf in the State of Hawaii Circuit Court of the Fifth Circuit and filed a motion for a Temporary Retraining Order ("TRO").  This occurred in April 2002.  Circuit Court Judge George Masuoka granted the TRO and there were discussions which involved creating a position for me in an attempt to settle the case.  Although there were discussions, no position was created for me and I never moved into another job.  Since the TRO was in place, I continued working for the Kauai Police Department.

11.      In 2002, the Kauai Police Department was constructing a new building and making plans to transfer the department to the new facility.  I provided some assistance between January 2002 and October 2002 to Lum who was making plans to move to the new building, so I had the opportunity to see the plans and learned that there was office space planned in the new building for everyone but me.

4

12.      When the police department moved from its old building
to the new facility in November 2002, Deputy Chief Wilfred Ihu
("Ihu") had to convert the library located in the A&T Bureau
into a workspace for me.  He moved the library shelves out and
found me an office chair.  I brought over the metal desk I had
been using in the old building.  There was no wiring in place
for a computer and I had to wait months before the Acting
Assistant Chief was able to get the room wired for a computer.
The only telephone jack in the room was next to the door so that
I had to get up from my desk and walk to the door to answer the
telephone.  The room was so small that I could not put the desk
near the telephone jack without blocking the door.  Since I was
working in what had been planned to be a library, the telephone
extension I was using was listed as "library" and people had
trouble calling me if they needed to contact me.  When Freitas
learned that I had been provided with working space, he acted to
get me out of it.

13.      During this period, I observed that Freitas
transferred the A&T Clerk to his office and he told me that he
wanted me to move to her work station, which was located out in
the open, and to do her work in addition to the work I was doing
as the Police Commission Secretary.  The conditions he set up

5

made it very difficult to complete work for the Police
Commission. I needed to have a secure workspace because I was
doing confidential work for the Police Commission. I could not
do that work in the open nor could I leave the Police Commission
files unsecured. That is why Ihu had set up the library for me
to work in.

14.     I contacted Norman Holt ("Holt") who was the Chair of
the Police Commission at that time and explained the difficulty.
He arranged through Deputy County Attorney Laurel Loo and Acting
Assistant Chief Miles Tanabe that after I had completed the
Police Commission work, I would do the A&T clerk's work. I
agreed to do the work and I did so; however, Freitas kept
pressuring Tanabe to make me do the A&T clerk's work at the A&T
clerk's workstation. Anytime Tanabe asked me to do anything, I
had to get up, walk down the hallway and to the A&T clerk's
station to do it. It put a lot of unnecessary pressure on me
when I tried to get the Police Commission's work done on time.

15.     Freitas' efforts made it difficult for me to interact
with my coworkers. In addition to the A&T clerk's work that I
was doing for Tanabe, I learned from Vivian Akina and Evelyn
Branco, who worked in Fiscal, that they had been instructed by
Freitas to assign me some of their work as well. However,

neither of them did actually give me any of their work. Nonetheless, it made interacting with these coworkers very awkward.

16.     In December 2002, I was no longer able to continue working under the conditions that had been forced on me and I sought medical treatment. At that same time, I was required to take vacation days or lose them, so I took about 19 days of vacation.

17.     Although I was at home when Stanton Pa ("Pa") was elected Chair of the Police Commission replacing Holt, I knew he needed my assistance since, being new to the job, he was not familiar with the duties and responsibilities of being chairman. I explained to Pa that I could no longer work in the police station because of the conditions that Freitas had forced upon me and he gave me permission to work from my home. Despite the medical conditions I was suffering from at the time, I did Police Commission work from my home until the Commission removed me as their Secretary in February 2003.

18.     In November 2002, Bryan Baptiste was elected Mayor of Kauai County, replacing Maryanne Kusaka. Former Mayor Kusaka's office had been participating in settlement negotiations with my attorney since the TRO regarding the termination was still in

place.  There had been a tentative offer at that time, but no paperwork had been signed to finalize the situation.  When Mayor Baptiste took over, the tentative offer fell through.  Instead, he made an offer to me to be an at-will Secretary with the Americans with Disabilities Act ("ADA") Director and Board of Directors.  I was not able to accept the offer that Mayor Baptiste made because it was the same as being secretary to the Police Chief and Police Commission and I feared of being caught in the middle again.

19.       On June 17, 2003, Judge Masuoka granted the County's motion for summary judgment and dissolved the TRO that allowed the termination to stand.

20.       In October 2003, the State Department of Labor and Industrial Relations ("DLIR") approved my claim for worker's compensation.  Exhibit "A" attached hereto is a true and correct copy of the DLIR decision that provided compensation starting from February 3, 2003.

21.       I learned in March 2004 from the attorney representing me in the matter that $15,389.13 had been paid by the insurance company to Kauai County to reimburse the County for payment it had been making to me for accrued sick leave under the Worker's Compensation Act.  I had authorized the worker's compensation

insurance carrier to reimburse the County directly.  My understanding of my employment status at the time was that I was being paid under worker's compensation and not as a salaried employee of the County.

22.      In March 2004, I applied for an increase of my home equity loan from American Savings Bank.  I did not fill out the application form and it is not in my handwriting.  When I made the application, I informed the bank that I had been terminated from my employment from the county and I was collecting sick leave.  When I noted the inaccuracy on the bank loan application, I pointed it out to the bank.  Exhibit "B" attached hereto is a true and correct copy of a letter from Diana Simao, Bank Manager for American Savings Bank dated May 13, 2004 in which she memorialized the information that I provided to her.

23.      Any claim that Mayor Baptiste terminated me for "reasons unrelated to the case" is false.  It is my impression that the County discovered it had made an error in failing to terminate me after Judge Masuoka dissolved the TRO and acted to correct that error only after the application from American Savings Bank brought it to the County's attention.

24.      I further do not believe that Mayor Baptiste could legally terminate me because I did not work for him.  All

personnel actions are recorded on a three-part Payroll
Certification Form and, if I actually had been transferred to
the Mayor's office, such a form would have been prepared.  I
never received the "employee copy" of that form which would
indicate that my position had been transferred to the Mayor's
Office. I was an employee of the Kauai Police Department and was
receiving worker's compensation from the Kauai Police Department
budget.  Pursuant to the Kauai County Charter, only the Chief of
Police can terminate my employment.

25.      The deteriorating relationship between Freitas and
myself before his return to work in January 2002 was my own
personal feeling that I never shared with Freitas.  The first
time that Freitas learned about my personal feelings on his
actions was at my deposition taken in this lawsuit that was long
after he terminated me.  I did disagree with Freitas' decision
not to promote Captain Moriguchi to the position of Assistant
Chief after he had successfully served for two years in the
acting capacity and with Freitas' decision to permit Paul Hurley
to step down from the position of Deputy Chief into the position
because the pay for an Assistant Chief was higher than that of
Deputy Chief.  I never voiced my feelings to Freitas.  I
continued to do my work in an efficient manner that was

10

evidenced by the job performance evaluations that was given me
by Freitas.

26.      When Freitas was put on administrative leave, he left
a loaded, department-issued weapon with a bullet in the chamber
ready to fire in an unlocked drawer.  It was clearly a dangerous
situation since all doors to the Chief's Office were left wide
open and that drawer was accessible in the early morning hours
when office personnel were not present.  I asked Sergeant Wes
Kaui for his assistance to secure the weapon – he is a sworn
officer — he agreed with me about the dangerous circumstances of
this unsecured weapon and inquired about approval to have this
loaded weapon moved to a secure location.  I contacted the
people necessary to get the approval and prevented a potentially
deadly situation caused by Freitas' careless storage of a loaded
weapon.

27.  Exhibit **J** attached hereto is a true and correct copy of a
letter dated May 10, 2004 from Bryan J. Baptiste to myself
including the County of Kauai Application for Transfer of
Vacation & Sick Leave Credit or Payment in Lieu of Vacation.  In
accordance with Court rules, my legal counsel have redacted my
street address and all but the last four digits of my Social

11

Security Number from the exhibit to protect my privacy since they are not necessary for the adjudication of this case.

28.     Exhibit **K** attached hereto is a true and correct copy of a County of Kauai Department of Personnel Services Payroll Certification signed by Defendant George Freitas on May 10, 2002 that dismisses me from my position of Private Secretary.  In accordance with Court rules, my legal counsel have redacted my street address and all but the last four digits of my Social Security Number from the exhibit to protect my privacy since they are not necessary for the adjudication of this case.

29.  Exhibit **L** attached hereto is a true and correct copy of a County of Kauai Department of Personnel Services Payroll Certification signed by Wilfred Ihu on June 3, 2002 which corrects the Payroll Certification at Exhibit K above to read "termination" in lieu of "dismissal."  In accordance with Court rules, my street address and all but the last four digits of my Social Security Number have been redacted from the exhibit to protect my privacy since they are not necessary for the adjudication of this case.

30.  Exhibit **M** attached hereto is a true and correct copy of a County of Kauai Department of Personnel Services Payroll Certification signed by Wilfred Ihu on June 3, 2002 which

Cancels the P[ayroll] C[ertification] pursuant to Court Order,
Civil No. 02-1-0086 which dismissed me from my position of
Private Secretary.  In accordance with Court rules, my street
address and all but the last four digits of my Social Security
Number have been redacted from the exhibit to protect my privacy
since they are not necessary for the adjudication of this case.

DATED:  Lihue, Kauai, Hawaii _01 - 12 - 2007_, 2007.


_____
JACQUELYN K. TOKASHIKI