FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

IN THE UNITED STATES DISTRICT COURT

MAR 0 9 2004

FOR THE DISTRICT OF HAWAII    at 3 o'clock and 57 min. P M
WALTER A.Y.H. CHINN, CLERK

| | |
|---|---|
| JACQUELYN K. TOKASHIKI, | ) Civ. No. 03-00065 ACK/LEK |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Law Office of |
| | ) CLAYTON C. IKEI |
| GEORGE FREITAS, | ) |
| Individually and in his | ) MAR 1 1 2004 |
| capacity as Chief of | ) |
| Police, County of Kauai, | ) FILED |
| JOHN DOES 1-5 and JANE DOES | ) |
| 1-5, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

The matter before this Court arises out of Plaintiff Jacquelyn K. Tokashiki's employment with the County of Kauai County Police Department ("KPD") as Private Secretary to the Chief of Police, Defendant George Freitas. Plaintiff alleges that she was transferred from her position and later terminated in violation of her rights to Due Process and Freedom of Speech.

Exhibit **H**

## I.  **Factual History.**[1]

Between February 1, 1980 and May 31, 2002, Plaintiff served as Private Secretary to the Chief of Police of the County of Kauai Police Department.  During that time, Plaintiff simultaneously served as Private Secretary to the Deputy Chief of the KPD, as well as the Kauai County Police Commission ("Police Commission"). Pursuant to her dual rule, Plaintiff's duties included processing complaints made against members of the KPD.

Defendant Freitas was appointed Chief of Police of the KPD in 1995.  Upon his appointment, Defendant Freitas retained Plaintiff as his Private Secretary. Between 1995 and 2002, Defendant Freitas prepared periodic performance evaluations of Plaintiff, and was apparently aware of the duties and responsibilities involved in her dual role as secretary to both the Chief of Police and the Police Commission.

In late July and early August, 2001, Plaintiff

---

[1]    The Court notes that its discussion of facts is solely for the purpose of evaluating Defendant Freitas' motion, and do not limit any determinations to be made by the ultimate finder of fact in any way.

received and processed two misconduct complaints against
Defendant Freitas.   In her capacity as secretary to the
Police    Commission,    Plaintiff    was    administratively
involved throughout the complaint proceedings:

> [She] processed and distributed the
> complaints against Freitas, arranged for
> the meeting of the Police Commission,
> secured the presence of the County
> Attorney and Mayor at the meeting,
> conducted    research    and    provided
> reference materials for the Police
> Commission when it acted upon the
> complaints, and after the Commission
> decided to accept and investigate the
> complaints against Freitas, prepared the
> documents to reflect the decision of the
> Police Commission.

(Memorandum in Support of Plaintiff's Motion for Partial
Summary Judgment filed Aug. 25, 2003 at 3.)   Plaintiff
also made arrangements to hire the investigator appointed
by   the   Police   Commission,   arranged   the   interviews
conducted by the investigator, and participated in an
interview with the investigator.

On   August   10,   2001,   the   Police   Commission
formally placed Defendant Freitas on leave with pay,
effective August 13, 2001, pending investigation of the
complaints.   Defendant Freitas was also "directed to

3

surrender items issued by the [KPD], including, but not limited to, weapons, identification and badges."

Defendant Freitas briefly entered his private office in the Kauai Police Station on August 20, 2001, even though he was still on suspension and had been directed by the Commission not to enter his office. Plaintiff wrote a memorandum detailing Defendant Freitas' conduct. Defendant Freitas wrote letters to Kauai County Attorney Hartwell Blake on August 22 and 23, 2001.

In his August 22 Letter, Defendant Freitas complained that Plaintiff made misrepresentations concerning the whereabouts of his duty weapon, which he ordinarily kept in his private office. He also expressed concerns about the Police Commission's ongoing investigation into his conduct. In his August 23 Letter, Defendant Freitas expressed further concerns regarding the conduct and loyalty of Plaintiff during the investigation.

Plaintiff prepared a written response to Freitas' letters on August 27, 2001. In this letter, she explained that Defendant Freitas' gun was loaded, and was

4

found in an unlocked drawer in his office, which was also unlocked throughout the day. Plaintiff represented that she had the gun removed from the office not only to protect Chief Freitas, the Kauai Police Department, and the County of Kauai, but also to preserve a safe work environment (although apparently the gun had been in that same drawer for many years, without any prior complaint by Plaintiff). Plaintiff also requested to be excused from attending Police Commission meetings "[t]o quiet any further allegations from Chief Freitas, and keep the Police Commission's investigation flawless."

During November, 2001, Plaintiff assisted the Police Commission's Investigator by scheduling meetings with KPD personnel. She also made a statement to the Investigator on November 14, 2001.

After Honolulu magazine printed an article about the KPD in its October 2001 issue, Plaintiff wrote a letter to the editor responding to the article. Honolulu magazine printed her letter in its January 2002 issue.

Defendant Freitas returned to duty as Chief of Police on January 7, 2002. At that time, Defendant

Freitas "verbally directed Plaintiff to surrender her office key and report to the Administrative and Technical Bureau within the [KPD]." Defendant Freitas also confronted Plaintiff about the letter she wrote to Honolulu magazine. On April 26, 2002, Defendant Freitas delivered a letter which terminated Plaintiff's employment, effective May 31, 2002.

## II. **Procedural History.**

As a result of the described events, Plaintiff initiated two lawsuits, one in state court and one in federal court.

### A. **State Court Proceedings**

On May 14, 2002, Plaintiff filed a Verified Complaint for Declaratory and Injunctive Relief ("State Complaint") in the Fifth Circuit Court for the State of Hawaii. In her State Complaint, Plaintiff alleged wrongful termination of her employment in violation of various civil service rules and regulations, including Hawaii Revised Statutes ("H.R.S.") § 378-62 (Hawaii whistle blower statute).

On February 25, 2003, Defendant Freitas filed a

6

motion for partial summary judgment as to all counts of Plaintiff's State Complaint, except for the whistle blower claim. Defendant County of Kauai filed a joinder to the motion on March 3, 2003. The state court granted Defendant Freitas' motion and entered its order on June 17, 2003, leaving the whistle blower cause of action as Plaintiff's sole claim in the state lawsuit.

On March 25, 2003, Defendant Freitas filed a motion for partial summary judgment on the whistle blower claim. Defendant County of Kauai filed a joinder to the whistle blower motion on March 28, 2003. After filing a memorandum in opposition, Plaintiff then filed a cross-motion for summary judgment on the whistle blower claim. Oral arguments on the whistle blower cross-motions took place October 6, 2003.

On January 22, 2004, pursuant to the state court's oral ruling, Defendant Freitas submitted a proposed order granting summary judgment on the whistle blower claim to the state court, with Plaintiff's

7

approval.[2] (Declaration of Dan K. Obuhanych filed Feb. 6, 2004 ¶ 10); (Exh. "H" to Defendant's Reply). On February 5, 2004, Defendant Freitas submitted a proposed order granting Defendant County of Kauai's joinders to Defendant Freitas' state court motions for summary judgment, with Plaintiff's approval.[3] (Feb. 6, 2004 Obuhanych Decl. ¶ 12); (Exh. "I" to Defendant's Reply).

## B. **Federal Court Proceedings**

On February 10, 2003, Plaintiff filed a complaint with this Court. In her complaint, brought under 42 U.S.C. § 1983, Plaintiff asserted that Defendant Freitas violated her rights to (1) Due Process under the Fifth and Fourteenth Amendments to the United States Constitution, and (2) Free Speech under the First and

---

[2] Defendant County of Kauai also approved the form of the proposed order. (Exh. "H" to Defendant's Reply.) The Court notes that the proposed state court order simply grants summary judgment on the basis of "having reviewed and considered the motion, the memoranda in support thereof and in opposition thereto, having heard and considered the arguments of counsel, and being fully apprised of the matters before it, and good cause appearing therefor." Id.

[3] Defendant County of Kauai also approved the form of the proposed order. (Exh. "I" to Defendant's Reply.)

Fourteenth Amendments of the United States Constitution by removing her as the Secretary to the Chief of Police and Kauai Police Commission, and subsequently terminating her employment.

On March 11, 2003, Defendant Freitas filed a Motion to Strike Portions of Complaint and Attachments. On March 20, 2003, Magistrate Judge Leslie E. Kobayashi granted in part and denied in part the motion. Defendant Freitas then filed his Answer on April 21, 2003.

On August 25, 2003, Plaintiff filed a Motion for Partial Summary Judgment as to Her Violation of Freedom of Speech Claim. The Court denied the motion by Order dated October 2, 2003.

Defendant Freitas filed the pending motion for summary judgment on December 17, 2003. Plaintiff filed her Opposition on January 30, 2004. Defendant filed his Reply Memorandum on February 6, 2004, along with a separate Objections and Reply to Plaintiff's Concise Statement of Facts.[4] Oral argument occurred on February

---

[4]    Defendant additionally lodged an ex parte motion to seal his Reply Memorandum and Reply to Plaintiff's

17, 2004.

## STANDARD OF REVIEW

### I.  Summary Judgment

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[5]  Fed. R. Civ. P. 56(c)).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence

---

Concise Statement of Facts on February 6, 2004.  The Court granted Defendant's ex parte motion on February 9, 2004.

[5]  Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence. Fed. R. Civ. P. 56(e).  Legal memoranda and oral argument are not evidence and do not create issues of fact.  See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

is such that a reasonable jury could return a verdict for the nonmoving party.'"[6]  Thrifty Oil Co. v. Bank of America Nat'l Trust & Sav. Ass'n, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted).  Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party may do so with affirmative evidence or by "'showing' — that is pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  All evidence and reasonable

---

[6]  Disputes as to immaterial issues of fact do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1478 (9th Cir. 1986).

11

inferences drawn therefrom are considered in the light most favorable to the nonmoving party. <u>See, e.g.</u>, <u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987). So, too, the Court's role is not to make credibility assessments. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Id.</u> at 250-51. Or, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgement. <u>UA Local 343 of the United Ass'n of Journeymen & Apprentices v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1995). Upon showing a prima facie case, it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under

12

that rule." <u>Id.</u> (quoting Fed. R. Civ. P. 56(e)).

The nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. <u>See</u> <u>Celotex</u>, 477 U.S. 322-23; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. <u>Villiarmo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. Summary judgment may be granted "'[i]f the evidence is merely colorable or is not significantly probative.'" <u>Nor-Cal Plumbing</u>, 48 F.3d at 1471 (quoting <u>Anderson</u>, 477 U.S. at 249-50) (modification in original).

## **DISCUSSION**

### I.  **Res Judicata**

As an initial matter, the Court notes that Defendant Freitas raises the issue of res judicata in his Reply. However, consideration of the doctrine is

premature because no final judgment exists at present. Pedrina v. Chun, 906 F. Supp. 1377, 1401-02 (D. Haw. 1995) (providing a thorough discussion on finality under Hawaii law), aff'd, 97 F.3d 1296 (9th Cir. 1996); see Kauhane v. Acutron Co., 795 P.2d 276, 279 (Haw. 1990) (holding that a judgment of the state circuit court became final for purposes of res judicata when the plaintiff withdrew his pending appeal from the judgment), cited in Flores v. Barretto, 54 P.3d 441, 450 (Haw. 2002) (Moon, C.J., dissenting); see also James W. Glover, Ltd. v. Fong, 42 Haw. 560 (Haw. 1958) ("A judgment is final where the time to appeal has expired without appeal being taken." (citations omitted)), quoted in Littleton v. Hawaii, 708 P.2d 829, 833 (Haw. App. 1985). The Court therefore proceeds to the discussion of Defendant's motion.

## I.  Count I (Denial of Due Process)

Defendant argues that the Court should grant its motion for summary judgment as to Count I because Plaintiff is not entitled to protection under the Due Process Clause of the Fourteenth Amendment. Plaintiff

14

does not appear to oppose Defendant's motion as to Count
I.  See (Plaintiff's Opposition at 12-13).  At the
hearing, Plaintiff confirmed abandonment of Count I.  The
Court will nevertheless discuss the issue in the interest
of thoroughness.

The Due Process guarantees of the Fourteenth
Amendment apply to public employees who have a protected
property interest in the terms or conditions of their
employment.  Ulrich v. City & County of San Francisco,
308 F.3d 968, 975 (9th Cir. 2002) (citing Bd. of Regents
v. Roth, 408 U.S. 564, 576 (1972)); see Stiesberg v.
California, 80 F.3d 353, 356 (9th Cir. 1996) (quoting
Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d
56, 62 (9th Cir. 1994)).  Such an "interest is establish
'by existing rules or understandings that stem from an
independent source such as state law--rules or
understandings that secure certain benefits and that
support claims of entitlement to those benefits.'"  Id.
(citing Roth, 408 U.S. at 577).

Plaintiff does not dispute that during her
employment with KPD, she was an at-will, exempt employee.

15

Defendant's Separate and Concise Statement of Facts ¶ 2); (Plaintiff's Separate and Concise Statement of Facts at 1). First, as an at-will employee, Plaintiff's employment is, "by definition, . . . terminable at the will of either party, for any reason or no reason at all." Best Place, Inc., v. Penn Am. Ins. Co., 920 P.2d 334, 339 n.5 (Haw. 1996). Thus, under the employment at-will doctrine, an employer has the right to discharge an employee "for good cause, for no cause, or even for cause morally wrong." Parnar v. Americana Hotels, Inc., 652 P.2d 625, 628 (Haw. 1982). Moreover, the employment at-will doctrine imposes no duty on the part of an employer to terminate an employee in good faith. Calleon v. Miyagi, 876 P.2d 1278, 1283 (Haw. 1994). Thus, as an at-will employee, Plaintiff does not hold any protected property interest in her employment.

Second, as an exempt employee, the Rules of the Kauai County Civil Service Commission ("KCCSC") do not apply to Plaintiff. KCCSC Rules § 1-2(a) specifically states that the Rules "shall not apply to positions and

16

employees[7] exempt from civil service." The Rules define the positions exempt from civil service as "those positions, persons in those positions, and personal services exempted from the civil service by [Hawaii Revised Statutes ("H.R.S.") § 76-77 or any other law." Kauai County R. Civ. Serv. Comm'n § 1-10. H.R.S. § 76-77 specifically exempts the "[p]ositions of one private secretary for each department head" from the civil service.

As the Private Secretary to the Kauai County Chief of Police, a department head, Plaintiff is statutorily exempt from the civil service law. See (Compl. ¶ 9); Haw. Rev. Stat. § 76-77. KCCSC Rules § 2-34(b), which addresses standing to appeal an action of a director or appointing authority, states that "[a]s to any matter within the scope of [H.R.S. ch. 76], any person suffering legal wrong or adversely affected or

---

[7]    The KCCSC Rules define an "employee" as "a person holding a civil service position in accordance with civil service law whether in a permanent position or otherwise and whether as an officer or otherwise. Kauai County R. Civ. Serv. Comm'n § 1-10.

17

aggrieved because of any action by the director or appointing authority may appeal to the commission." Similarly, KCCSC Rules ch. 13, which details the grievance procedure and appeals to the Civil Service Commission, is available only to "employees of all positions in the county service not exempted by the provisions of [H.R.S. § 76-77], unless otherwise specified." Kauai County R. Civ. Serv. Comm'n § 13-1. Accordingly, Plaintiff is not entitled to any civil service protections and is merely an at-will employee. See Gallas v. Sanchez, 405 P.2d 772, 776 (Haw. 1965) (holding that civil service protections do not apply to an exempt employee).

Thus, as an at-will, exempt employee, Plaintiff cannot invoke the Due Process protections of the Fourteenth Amendment because she holds no protected property interest in her employment. The Court therefore finds that no genuine issues of material fact exist and that Defendant Freitas is entitled to judgment as a matter of law, and accordingly GRANTS Defendant Freitas' motion as to Count I (Denial of Due Process).

18

## II.  Count II (Violation of Right of Freedom of Speech)

### A.  Prima Facie Case

Although Defendant Freitas' Motion for Summary Judgment primarily focuses on qualified immunity as to Count II, the Court will consider the issue of whether Plaintiff can establish a prima facie case.  To state a claim against a government employer for violation of the First Amendment, an employee must show that (1) he or she engaged in protected speech; (2) the employer took "adverse employment action"; and (3) his or her speech was a "substantial or motivating factor for the adverse employment action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (citations omitted).

### 1.  Protected Speech

In her Complaint, Plaintiff sets forth the following bases for her claim that Defendant Freitas retaliated against her in violation of her First Amendment Right to Freedom of Speech:

> a.  Plaintiff's work as the secretary of the Kauai Police Commission in processing the complaints of two Kauai police officers against George Freitas to the Kauai Police

19

Commission;

b.    Plaintiff's memoranda to the Acting Chief of Police and the Kauai Police Commission reporting the violations of George Freitas of the Directives of the Kauai Police Commission written when the Kauai Police Commission suspended with pay George Freitas;

c.    Plaintiff's work, at the request of the Kauai Police Commission in facilitating the investigation of the charges filed against George Freitas with the Kauai Police Commission;

d.    Plaintiff's testimony, under oath, to the investigator hired by the Kauai Police Commission to investigate the charges against George Freitas;

e.    Plaintiff's letter to the Editor commenting on the accuracy of an article published in the Honolulu Magazine, a monthly periodical magazine published and distributed in the State of Hawaii.

(Complaint at 2.)

Defendant Freitas argues that the acts Plaintiff identifies in support of her claim either do not constitute speech or were not protected speech, and therefore do not support her retaliation claim. He also

20

identifies a number of incidents to support his assertion that his transfer and subsequent termination of Plaintiff did not violate her First Amendment rights:

> Plaintiff admonishing Chief Freitas over a personal relationship in early 2001;
>
> Plaintiff criticizing his fiancee's manner of dress during a police commission conference in May 2001
>
> Plaintiff inappropriately suggesting that Chief Freitas should seek another job in June or July of 2001;
>
> A disagreement over a new building that was being constructed, where Plaintiff expressed displeasure and walked out of the meeting very upset.

(Defendant's Concise Statement of Facts ("Defendant's CSF at 2.)

As to Defendant Freitas' argument that the processing of complaints and facilitation of the Police Commission's investigation was not speech,[8] the Court

---

[8]    At oral argument, counsel for Defendant Freitas asserted that the Chief expected Plaintiff to fulfil her administrative duties with respect to the investigation and that he expected her to speak with the investigator if so requested.  However, in his August 2001 Letters, Defendant Freitas requested exclusion of the Plaintiff from the investigation process.  (Exhs. "C" & "D" to Plaintiff's  SCS).    Furthermore,  Defendant  Freitas

notes that expressive conduct can constitute speech protected by the First Amendment. See R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992); Texas v. Johnson, 491 U.S. 397, 403 (1989). However, Plaintiff's work in processing the complaints and facilitating the investigation was not expressive, but merely a part of the duties of her employment. "Non-verbal conduct implicates the First Amendment when it is intended to convey a "particularized message" and the likelihood is great that the message would be so understood." Nunez v. Davis, 169 F.3d 1222, 1226 (9th Cir. 1999).

Plaintiff provides no evidence that she intended to convey any message by processing the complaints or facilitating the investigation, and therefore her conduct cannot be considered speech. Cf. id. (finding expressive conduct where a plaintiff "testified that she intended by

---

testified in his deposition that he assumed, "given [Plaintiff's] very delicate role in terms of having-- handling confidential files and being the commission's secretary, the county would not be so stupid as to put her in the position of also being an active witness in [the investigation]." (Exh. "B" to Plaintiff's CSF at 194:22-195:3.)

her conduct to convey a message to the court clerks and co-workers that [the defendant] should not condition court clerks's [sic] benefits on working in his reelection campaign[, and t]he court clerks, as well as co-employees testified that they understood the message"). Thus, Plaintiff's work in processing the complaints and facilitating the investigation cannot support her retaliation claim.

Similarly, as to the additional incidents identified by Defendant Freitas, the Court finds that except for the discussion concerning the public perception of Defendant Freitas living with his future fiancee while both were still married to others,[9] the incidents do not qualify as protected speech because they address matters of personal rather than public concern. Accordingly, none of the additional incidents identified by Defendant Freitas, aside from the discussion about his living with his future fiancee, support Plaintiff's First

----

[9]    Plaintiff contends that she informed Defendant Freitas that such a living arrangement would hurt the images of both his position as Chief and the entire KPD in the eyes of the public.

Amendment retaliation claim.

As to Defendant Freitas' argument that Plaintiff did not engage in protected speech, "[a]n employee's speech is protected under the First Amendment if it addresses 'a matter of legitimate public concern.'" Coszalter, 320 F.3d at 973 (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 571 (1968)) (citing Connick v. Myers, 461 U.S. 138, 149-50 (1983)).  The determination of "[w]hether a public employee's speech or expressive conduct addresses a matter of public concern depends upon 'the content, form, and context of a given statement, as revealed by the whole record.'" Nunez, 169 F.3d at 1226 (quoting Connick, 461 U.S. at 147-48).  Nevertheless, "[a] public employee's speech or expressive conduct deals with a matter of public concern when it 'can be fairly considered as relating to a matter of political, social, or other concern to the community.'" Id. (quoting Voigt v. Savell, 70 F.3d 1552, 1559 (9th Cir. 1995)). Furthermore, "[t]here is no legal requirement that a public employee's speech be made public in order to constitute speech on a matter of public concern." Id. at

24

1228 (citing <u>Givhan v. W. Line Consol. Sch. Dist.</u>, 439 U.S. 410, 413-17 (1979)).

Viewing the evidence and reasonable inferences in the best light to Plaintiff, and keeping mindful of the overall context of her simultaneous duties as both private secretary to Defendant Freitas and secretary to the KPD Police Commission, the Court finds that Plaintiff engaged in speech addressing a public concern. Although nearly all the incidents identified by Defendant Freitas would not qualify as protected speech, Plaintiff's disclosure of possible misconduct or misbehavior by Chief Freitas clearly qualifies as addressing a matter of public concern. <u>E.g.</u>, <u>Brawner v. City of Richardson</u>, 855 F.2d 187, 190 (5th Cir. 1988); <u>Sexton v. Martin</u>, 210 F.3d 905, 910 (8th Cir. 2000) (citing <u>Brawner</u>, 855 F.2d at 190); <u>Lighton v. Univ. of Utah</u>, 209 F.3d 1213, 1224-25 (10th Cir. 2000) (citing <u>Schalk v. Gallemore</u>, 906 F.2d 491, 494 (10th Cir. 1990)). Plaintiff's testimony to the Police Commission's investigator also addresses a matter

of public concern.[10]  Cf. Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996) (affirming a district court's holding that a plaintiff's "potential 'sworn testimony before an adjudicatory body'" was protected speech because of its form and context (quoting Pro v. Donatucci, No. 94-6001 at 3 (E.D. Pa. Sept. 6, 1995)); Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1577 (5th Cir. 1989) (holding that a plaintiff's testimony as an individual employee at a closed Equal Employment Opportunity hearing qualified for First Amendment protection); Reeves v. Claiborne, 828 F.2d 1096, 1099-1100 (5th Cir. 1987) (finding that neutral and generally factual testimony in a court proceeding constituted a matter of public concern); Tafoya v. County of Fresno, 13 Fed. Appx. 715,

---

[10]    Although the parties dispute Defendant Freitas' awareness of Plaintiff's testimony, such a dispute bears on the third element of Plaintiff's prima facie case. Furthermore, for the purposes of analyzing a motion for summary judgment, the Court assumes all disputed facts in favor of Plaintiff, the non-movant.  E.g., Diruzza v. County of Tehama, 206 F.3d 1304, 1314 (9th Cir. 2000) (citing Liston v. County of Riverside, 120 F.3d 965, 977 (9th Cir. 1997)).

716 (9th Cir. 2001)[11] (stating that "court testimony in support of some other Sheriff's Department officers who sued the department alleging discrimination" is constitutionally protected (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 593 (1998))). <u>But see Wright v. Illinois Dep't of Children & Family Servs.</u>, 40 F.3d 1492, 1505 (7th Cir. 1994) (declining to adopt a blanket rule that an "employee who testifies before an official government adjudicatory or fact-finding body speaks in a context that is inherently of public concern"); <u>Arvinger v. Mayor & City Council of Baltimore</u>, 862 F.2d 75, 79 (4th Cir. 1988) (emphasizing the centrality of content). Furthermore, the discussion concerning the possible negative public ramifications of Defendant Freitas' living with his future fiancee while they were both married to others addresses a matter of public concern. <u>See Nunez</u>, 169 F.3d at 1226, 1228. Finally, Plaintiff's letter to <u>Honolulu</u> Magazine addresses a matter of public

---

[11]    The Court notes that it is not relying on this unpublished decision, pursuant to U.S. Ct. App. 9th Cir. Rule 36-3.

27

concern.    The Court accordingly finds that Plaintiff satisfies the first element of her prima facie case.[12]

## 2.    **Adverse Employment Action**

Under Ninth Circuit law, the relevant inquiry in First Amendment retaliation cases is "whether 'the exercise of the [F]irst [A]mendment rights was deterred' by the government employer's action." Coszalter, 320 F.3d at 975 (quoting Allen v. Scribner, 812 F.2d 426, 434 n.17 (9th Cir. 1987)).  This is because:

> The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases.  The goal is to prevent, or redress, actions by a government employer that "chill the exercise of protected" First Amendment rights.  Various kinds of employment actions may have an impermissible chilling effect.  Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights.

Id. at 974-75 (citations omitted) (quoting Rutan v. Republican Party, 497 U.S. 62, 73 (1990)) (citing Rutan,

_____

[12]    "The determination whether speech involves a matter of public concern is a question of law." Nunez, 169 F.3d at 1226 n.1 (citing Connick, 461 U.S. at 148 n.7.

497 U.S. at 75-76). Accordingly, Plaintiff can establish a valid claim by "establish[ing] that the actions taken by [Defendant Freitas was] 'reasonably likely to deter [her] from engaging in protected activity [under the First Amendment].'" Id. at 976 (fourth modification in original) (quoting Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000) (citing Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 847 (9th Cir. 2002)).

The Court finds that under the Ninth Circuit's "reasonably likely to deter" test, Defendant Freitas' transfer and subsequent dismissal of Plaintiff are each adverse employment actions for purposes of this case. See id. Accordingly, the Court finds that Plaintiff satisfies the second element of her prima facie case.

### 3.   Substantial or Motivating Factor

Defendant Freitas disputes his knowledge of Plaintiff's protected speech, and therefore argues that she cannot prove the causation element of her prima facie case.[13] Defendant Freitas furthermore argues that his

---

[13]   The Court notes that Defendant Freitas states in his Reply that "[f]or purposes of the present motion,

29

decision was not based on her "protected speech," and
identifies a number of other incidents to support his
argument, as discussed supra.    However, as discussed
supra, for the purposes of analyzing this motion, the
Court must assume all disputed facts in favor of
Plaintiff.

Thus viewing the facts and reasonable inferences
in the best light to Plaintiff, the Court finds that a
reasonable jury could determine that her protected speech
was a "substantial and motivating factor"[14] in Defendant
Freitas' decision to transfer and terminate her
employment.[15]    A genuine issue of fact therefore exists as

---

[he] accepts that those acts about which plaintiff has
evidence [he] had knowledge were 'substantial or
motivating' factors in her termination."    (Defendant's
Reply at 3 n.3.)

[14]    In its October 2, 2003 Order, the Court
thoroughly discusses the terms "substantial" and
"motivating," finding that they should be viewed in a
conjunctive sense.    See Tokashiki v. Freitas, Civ. No.
03-00065, at 22-27 (D. Haw. Oct. 2, 2003).    The Court
incorporates, without limitation, its discussion in the
October 2, 2003 Order.

[15]    As discussed by the Court when determining that
a genuine issue of fact existed as to this element,
Defendant Freitas' "deposition testimony details a number
of incidents, including those described in [his August

30

to the third element of Plaintiff's prima facie case.

The Court accordingly finds, for the purposes of this motion, that a reasonable jury could determine that Plaintiff establishes her prima facie case of First Amendment retaliation.

### 4.   **Employer's Burden**

Once a plaintiff establishes a prima facie case, "the burden shifts to the public employer to demonstrate either that, under the balancing test established by [Pickering v. Board of Education, 391 U.S. 563, 568 (1968)], its legitimate administrative interests outweighed [the plaintiff's] First Amendment rights or that, under the mixed motive analysis established by [Mt. Healthy City School District v. Doyle, 429 U.S. 274, 287 (1977)], it would have reached the same decision even in the absence of the plaintiff's protected conduct." Roe

---

2001 letters], all of which contributed to [the] erosion of trust" that prompted the transfer and dismissal of Plaintiff. Tokashiki v. Freitas, Civ. No. 03-00065 at 19 (D. Haw. 2003) (Order Denying Defendant Freitas' Motion to Continue Plaintiff's Motion; and Denying Plaintiff's Motion for Partial Summary Judgment) (citing May 6, 2003 Deposition of George Freitas, Jr. at 218-38).

31

v. City of San Diego, 356 F.3d 1108, 1112 (9th Cir. 2004)
(citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 668,
675-76 (1996); Ulrich, 308 F.3d at 976-77).

### a.    **Pickering Balancing Test**

As explained by the Ninth Circuit, the Pickering
balancing test weighs "'the interests of the [public
employee] as a citizen, in commenting upon matters of
public concern [against] the interest of the [public
employer] in promoting the efficiency of the public
services it performs through its employees.'" Nunez, 169
F.3d at 1228 (quoting Pickering, 391 U.S. at 569), quoted
in Cochran v. City of L.A., 222 F.3d 1195, 1200 (9th Cir.
2000); Bauer v. Sampson, 261 F.3d 775, 784 (9th Cir.
2001) (citing Pickering, 391 U.S. at 569); accord Hufford
v. McEnaney, 249 F.3d 1142, 1148 (9th Cir. 2001)
(describing the Pickering analysis as weighing the public
employee's interest in expressing his protected speech
against the public employer's interest in "'promoting
workplace efficiency and avoiding workplace disruption'"
(quoting Keyser v. Sacramento City Unified Sch. Dist.,
238 F.3d 1132, 1136 (9th Cir. 1998))).    The Pickering

analysis "'requires particularized balancing based on the unique facts presented in each case.'" <u>Moran v. Washington</u>, 147 F.3d 839, 845 (9th Cir. 1998) (quoting <u>Voigt</u>, 70 F.3d at 1560-61) (citing <u>Connick</u>, 461 U.S. at 150). The Ninth Circuit has set forth a number of factors for a court to consider when conducting this analysis. See <u>Hyland v. Wonder</u>, 972 F.2d 1129, 1139 (9th Cir. 1992). These factors include considering whether the speech at issue: (1) "impairs discipline or control by superiors," (2) "disrupts co-worker relations," (3) "erodes a close working relationship premised on personal loyalty and confidentiality," (4) "interferes with the speaker's performance of her or his duties," and (5) "obstructs the routine operation of the office," as well as considering the "'manner, time, and place'" in which the speech occurred. <u>Id.</u> (citing <u>Rankin</u>, 483 U.S. at 388; <u>Connick</u>, 461 U.S. at 151-52; <u>Roth</u>, 856 F.2d at 1407; <u>Bernasconi</u>, 548 F.2d at 861-62) (quoting <u>Connick</u>, 461 U.S. at 152).

Furthermore, when conducting the <u>Pickering</u> analysis, "courts must grant public employers 'wide

33

discretion and control over the management of its personnel and internal affairs.'" Moran, 147 F.3d at 846 (quoting Connick, 461 U.S. at 151). Although "'reasonable predictions of disruption,'" may be sufficient to carry the public employer's burden, id. (quoting Waters v. Churchill, 511 U.S. 661, 673 (1994) (plurality opinion)), the public employer's burden to show disruption "varies with the content of the speech"-- "[t]he more tightly the First Amendment embraces the speech, the more vigorous a showing of disruption must be made." Hyland, 972 F.2d at 1139 (citing Connick, 461 U.S. at 150; Roth, 856 F.2d at 1407; Allen, 812 F.2d at 432; Bernasconi, 548 F.2d at 862); see Keyser, 238 F.3d at 1138 n.2. The 'close working relationship,' exception cannot serve as a pretext for stifling legitimate speech or penalizing public employees for expressing unpopular views." McKinley v. City of Eloy, 705 F.2d 1110, 1115 (9th Cir. 1983), quoted in Nunez, 169 F.3d at 1229 (9th Cir. 1999).

Defendant Freitas relies heavily on McCabe v. Sharrett, 12 F.3d 1558 (11th Cir. 1994), to support his

34

argument that the loyalty and confidentiality required of
a private secretary should control in the case before
this Court, and repeatedly states that his decision to
transfer and ultimately terminate Plaintiff's employment
was based on the erosion of trust between them.  However,
the Court finds Defendant Freitas' analogy unpersuasive.[16]

In McCabe, the Eleventh Circuit determined that
the loyalty and confidentiality required by the position
of private secretary to a police chief outweighed a
plaintiff's constitutionally protected freedom of

---

[16]    The Court similarly finds that Branti v.
Finkel, 445 U.S. 507, (1980), Hobler v. Brueher, 325 F.3d
1145 (9th Cir. 2003), and Biggs v. Best, Best & Krieger,
189 F.3d 989 (9th Cir. 1999), inapposite to the instant
case.  At their core, Branti, Hobler, and Biggs all
involved termination on the basis of political
affiliation--they did not involve speech addressing a
public concern.
        Likewise, McDaniel v. Woodard, 886 F.2d 311, 314-
15 (11th Cir. 1989), did not involve speech addressing a
public concern, but rather an employee who (1) did not
obey her employer's direction not to speak with the
district attorney because of an interest in avoiding the
appearance of impropriety; and (2) helped to obtain and
serve divorce papers on her employer's brother during
working hours.
        Moreover, none of the cases cited by Defendant
Freitas involved an investigation of possible misconduct
or misbehavior by a secretary's immediate boss,
especially in the public service arena.

35

association right to marry a subordinate officer in that
police department.  Id. at 1572.  The McCabe court
explained that:

> It is a matter of common experience that
> spouses tend to possess a higher degree
> of loyalty to their marital partners
> than to their superiors, and often
> discuss workplace matters with one
> another, even matters that a superior
> has designated as confidential.

Id.

By contrast, Plaintiff Tokashiki's employment
included responsibilities not only to the Chief of
Police, but also to the Police Commission.[17] As discussed
supra, Plaintiff engaged in protected speech relevant to
the investigation of Defendant Freitas' possible
misconduct.  Plaintiff holds a clearly established and
particularly strong interest in disclosing misconduct or
misbehavior by a public official.  Keyser, 238 F.3d at
1138-39; McDonald v. City of Freeport, 834 F. Supp. 921,
931 (S.D. Tex. 1993); see Brawner, 855 F.2d at 190;

---

[17]    Defendant Freitas repeatedly indicated his
awareness of the extremely difficult position faced by
Plaintiff.

36

Sexton, 210 F.3d at 910; Lighton, 209 F.3d at 1224-25.
Moreover, such disclosures clearly outweigh the Kauai
Police Department's interest in promoting the efficiency
of the public services it performs--the disclosure of
misconduct or misbehavior by a public official actually
increases the efficiency of the public services and
therefore furthers the public employer's interest.[18]  See
Keyser, 238 F.3d at 1137 (stating that "'the [public
employer] does not have a legitimate interest in covering
up mismanagement or corruption and cannot justify
retaliation against whistleblowers as a legitimate means
of avoiding the disruption that necessarily accompanies
such exposure'" (quoting Johnson v. Multnomah County, 48
F.3d 420, 427 (9th Cir. 1995))); McDonald, 834 F. Supp.
at 931 (concluding "that the Defendants' interest in
promoting and administering a police department does not
even remotely outweigh the Plaintiffs', or anyone's
interest in revealing alleged public improprieties"

---

[18]    Plaintiff additionally provides the deposition
testimony of Deputy Chief Wilfred Ihu stating that Ihu
did not consider Plaintiff to be a problem.  See (Exh.
"J" to Plaintiff's CSF at 38:1-3).

because "[t]here is little doubt that those who engage in whistle blowing occupy a special place in the protective bosom of the First Amendment.  'Public employees are uniquely qualified to reveal unseemly machinations by their fellow employees . . . .'" (citations omitted) (quoting <u>Brown v. Tex. A. & M. Univ.</u>, 804 F.2d 327, 337 (5th Cir. 1986))).

Viewing the facts and reasonable inferences in the best light to Plaintiff,[19] and considering the overall circumstances of her employment and the events leading to her transfer and dismissal, the Court finds that the interest of Defendant Freitas, as Plaintiff's public employer, do not outweigh her interest in expressing her protected speech.[20]

—

[19]    As discussed <u>supra</u>, although Defendant Freitas asserts that he lacks knowledge of Plaintiff's protected speech, the Court must assume all disputed facts in favor of Plaintiff.

[20]    The issue is one of law for determination by the Court.  <u>See</u> <u>Cochran</u>, 222 F.3d 1195, 1200 (9th Cir. 2000) (citing <u>Connick</u>, 461 U.S. at 148 n.7), quoted in <u>Bauer</u>, 261 F.3d at 784.

### b.  Mt. Healthy Mixed Motive Analysis

The analysis for this element is closely aligned with the third element of Plaintiff's prima facie case-- whether her protected speech comprised a substantial and motivating factor in her termination.  Viewing the facts and reasonable inferences in the best light to Plaintiff, the Court finds that a reasonable jury could find that her transfer and termination would not have occurred in the absence of her protected speech.  Thus, a genuine issue of fact exists as to the burden shifting element.

### 5.  Conclusion

As discussed supra, viewing the facts in the best light to Plaintiff, the Court finds that Plaintiff establishes the first and second elements of her prima facie case, i.e. that she engaged in protected speech, and that Defendant Freitas took adverse employment action against her.  The Court finds a genuine issue of fact as to the third element of her prima facie case, that is whether her protected speech was a substantial or motivating factor for the adverse employment action.  As to the burden shifting element, the Court first finds

that under <u>Pickering</u>, Plaintiff's interest in expressing protected speech outweighs her public employer's interests in "promoting the efficiency of the public services it performs." Second, the Court finds a genuine issue of fact under <u>Mt. Healthy</u>, i.e. whether the adverse employment action would have occurred in the absence of Plaintiff's protected speech. The Court therefore holds that a genuine issue of material fact exists, and that Defendant Freitas is therefore not entitled to judgment as a matter of law.

**B.   Qualified Immunity**[21]

Defendant also argues that summary judgment is warranted because he is entitled to qualified immunity. The doctrine of qualified immunity shields public officials performing discretionary functions from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[21]   Because the Court grants Defendant's motion as to Count I (Due Process), it does not reach the issue of qualified immunity under that claim.

have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818
(1982), quoted in Gilbrook v. City of Westminster, 177
F.3d 839, 865 (9th Cir. 1999).  The protection offered by
qualified immunity is quite broad--it is available to all
government officials except "the plainly incompetent or
those who knowingly violate the law." Malley v. Briggs,
475 U.S. 335, 341 (1986), quoted in Brewster v. Bd. of
Educ., 149 F.3d 971, 977 (9th Cir. 1998).

In deciding whether an official is entitled to
qualified immunity, courts generally follow the two step
analysis of first inquiring whether "[t]aken in the light
most favorable to the party asserting the injury, do the
facts alleged show the officer's conduct violated a
constitutional right," and then considering whether the
right was "clearly established" at the time the alleged
violation occurred, and if so, whether a reasonable
official could have believed his or her conduct was
lawful.[22]  Saucier v. Katz, 533 U.S. 194, 201 (2001).

---

[22]    "The plaintiff bears the burden of showing that
the right at issue was clearly established." Sorrels v.
McKee, 290 F.3d 965, 969 (9th Cir. 2002) (citing
Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993).

41

However, in cases that involve free speech retaliation claims brought by a public employee, such as the one before this Court, the inquiry must "balance 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of [public employer], in promoting the efficiency of the public services that it performs through its employees.'" Moran, 147 F. 3d at 845 (first modification in original) (quoting Pickering, 391 U.S. at 568). Accordingly, to show that Defendant Freitas is not entitled to qualified immunity, Plaintiff

> must show that two things were clearly established at the time of the [adverse employment action]: "(1) that [her] speech involved a matter of public concern, and (2) that the interests served by allowing [her] to express [herself] outweighed the [public employer's] interest in promoting workplace efficiency and avoiding workplace disruption."

Hufford, 249 F.3d at 1148 (quoting Keyser, 238 F.3d at 1136); see Bauer, 261 F.3d at 784 (describing the second prong as "balanc[ing] the interests of the [public employee] as a citizen, in commenting upon matters of

public concern [against] the interest of the [public employer] in promoting the efficiency of the public services it performs through its employees" (citing Pickering, 391 U.S. at 568)).

The Court has analyzed both these elements in detail when discussing the merits of Plaintiff's First Amendment retaliation claim. See supra Discussion Sections II.A.1, II.A.4.a. As discussed supra, the Court finds that Plaintiff has engaged in speech addressing a matter of legitimate public concern, and that her interest in the protected speech outweighs the interests of Defendant Freitas, as her public employer.[23] See id.

Viewing the facts and reasonable inferences in

---

[23] The Court is mindful of Ninth Circuit's statement that qualified immunity "will rarely, if ever, be precluded" because the analysis requires "context-intensive, case-by-case balancing." Moran, 147 F.3d at 847. However, as discussed supra, the Court finds that Plaintiff holds a particularly strong and clearly established interest in her protected speech relating to the public perception of the police department and to the possible misconduct or misbehavior of her boss, Defendant Freitas, and that her interest outweighs Defendant Freitas' interest in promoting the efficiency of the services provided by the KPD. See supra Discussion Sections II.A.1, II.A.4.a.

the best light to Plaintiff,[24] the Court thus finds that Plaintiff satisfies both prongs of the balancing test, and accordingly finds that Plaintiff sufficiently establishes that Defendant Freitas is not entitled to qualified immunity. The Court therefore denies Defendant Freitas' motion as to qualified immunity relating to Count II (Violation of Right of Freedom of Speech).

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.

The Court GRANTS Defendant Freitas' motion as to Count I (Denial of Due Process). Plaintiff does not oppose the motion, and admits that she was an at-will, exempt employee. Plaintiff therefore lacked any protected property interest and cannot invoke the Due Process protection of the Fourteenth Amendment.

---

[24]    When deciding a motion for summary judgment on the question of qualified immunity, the Court must presume the facts to be those most favorable to the non-moving party. Diruzza v. County of Tehama, 206 F.3d 1304, 1314 (9th Cir. 2000); accord Moran, 147 F.3d at 844.

44

The Court DENIES Defendant Freitas' motion as to Count II (Violation of Right of Freedom of Speech). Viewing the facts and reasonable inferences in the best light to Plaintiff, the Court finds that Defendant Freitas is not entitled to judgment as a matter of law on the merits, and furthermore finds that Defendant Freitas is not entitled to qualified immunity as to Count II. IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, _____ MAR  9 2004 _____

_____
United States District Judge

TOKASHIKI V. FREITAS, CIV. NO. 03-00065 ACK/LEK; ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.