IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACQUELYN K. TOKASHIKI,          )  | Civ. No. 03-00065 ACK-LEK |
| )  | |
| Plaintiff,         )  | |
| )  | |
| v.               )  | |
| )  | |
| GEORGE FREITAS, Individually   ) | |
| and in his capacity as Chief of ) | |
| Police, County of Kauai, John   ) | |
| Does 1-5 and Jane Does 1-5      ) | |
| )  | |
| Defendants.       )  | |
| _____)  | |

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### PROCEDURAL BACKGROUND

On February 10, 2003, Jacquelyn K. Tokashiki ("Plaintiff") filed a Complaint in this Court alleging that George Freitas, Jr. ("Defendant"), individually and in his capacity as the Chief of Police, County of Kauai, violated her right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and violated her right to freedom of speech under the First and Fourteenth Amendments of the United States Constitution. See Complaint at ¶¶ 28-29.

On August 25, 2003, Plaintiff filed a Motion for Partial Summary Judgment as to Her Violation of Freedom of Speech

1

Claim, which the Court denied by Order dated October 2, 2003.

On December 17, 2003, Defendant filed a Motion for Summary Judgment as to both counts of Plaintiff's complaint alleging, inter alia, the defense of qualified immunity. Oral arguments were heard regarding Defendant's motion on February 17, 2004.

On March 9, 2004, the Court issued an Order that granted Defendant's motion as to Count I (denial of due process), denied Defendant's motion as to Count II (violation of right to free speech), and found that Defendant Freitas is not entitled to qualified immunity as to Count II.

Defendant Freitas filed a motion for reconsideration on March 23, 2004, which the Court granted in part and denied in part by Order dated April 28, 2004. On May 17, 2004, Defendant filed a second motion for reconsideration. The Court denied this motion by Order dated July 29, 2004. On May 28, 2004, while his second motion for reconsideration was pending, Defendant Freitas filed a notice of appeal of the Court's March 9, 2004 Order.

On July 21, 2004, Defendant Freitas filed a second motion for summary judgment. However, on July 29, 2004, Defendant lodged a motion to stay the proceedings of his July 21, 2004 Motion. On August 10, 2004, the Court granted the motion, construing it as a motion to stay pending interlocutory appeal and providing Defendant leave to re-file once the Ninth Circuit

issued its decision on Defendant's appeal of the March 9, 2004 Order.

Two years later, on August 7, 2006, the Ninth Circuit affirmed the District Court's March 9, 2004 denial of Defendant's Motion for Summary Judgment based on qualified immunity. Tokashiki v. Freitas, 201 Fed. Appx. 391, 394, 2006 WL 2255481 at *3 (9th Cir, 2006).[1]

On November 27, 2006, Defendant Freitas filed the instant Motion for Summary Judgment and a Concise Statement of Facts regarding all remaining claims in Plaintiff's Complaint. On January 17, 2007, Plaintiff Tokashiki filed an Opposition to Defendant's Motion for Summary Judgment and a Separate Concise Statement of Facts. On March 1, 2007, Defendant filed a Reply to Plaintiff's Opposition and Plaintiff's Concise Statement of Facts.

A hearing on Freitas's Motion for Summary Judgment was held on March 14, 2007.

---

[1] The Ninth Circuit also reversed the District Court "to the degree that the district court's decision was founded on a belief that Tokashiki's comments regarding Freitas's girlfriend were protected," and remanded for a determination of "whether Tokashiki's August 27, 2001 letter to the Commission was protected in light of [Garcetti v. Ceballos, – U.S. –, 126 S. Ct. 1951 (2006)] . . . ." Id.  At the hearing on March 14, 2007 for the instant Motion, the parties concurred that the issue regarding whether Plaintiff's letter to the Commission on August 27, 2001 was protected speech should be determined by the jury as factfinder.

**FACTUAL BACKGROUND[2]**

On February 1, 1980, Plaintiff Jacquelyn K. Tokashiki was first employed as Private Secretary for the Chief, Deputy Chief, and Police Commission of the County of Kauai. See Complaint at ¶ 8; Pl. Exh. "C" at ¶ 14. In 1995, Defendant George Freitas became the Chief of Police for the County of Kauai and retained Tokashiki as his private secretary. See Verified Complaint for Declaratory and Injunctive Relief and for Damages at ¶¶ 12-14, Tokashiki v. Freitas, et al., Civ. No. 02-1-0086 (Cir. Ct. Haw. May 14, 2002) ("State Court Complaint").

On August 10, 2001, the Kauai Police Commission formally put Defendant Freitas on leave pending an investigation into charges of misconduct. See Pl. Exh. "C" at ¶ 15.

Defendant Freitas returned to work as Chief of Police on January 7, 2002. That morning, Defendant verbally directed Plaintiff to surrender her office key and report to the Administrative and Technical Bureau ("A&T Bureau") within the Kauai Police Department. Id. at 16.

Plaintiff alleges that she was reassigned to a position that required a lower skill level and a reduced workload. See Plaintiff's Opposition pp. 13-14. Plaintiff also states that she

---

[2] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

4

was transferred to a small office that contained stacks of boxes of files that made it difficult for her to work and move around. The office did not have a computer and Plaintiff brought her computer from her previous position with her. See Tokashiki Decl. at ¶ 6.

On April 26, 2002, Defendant delivered a letter to Plaintiff terminating her employment effective May 31, 2002. See Def. Exh. "L".

Plaintiff filed her State Court Complaint on May 14, 2002, and then filed a Motion for Issuance of a Temporary Restraining Order ("TRO"). The Hawaii Circuit Court of the Fifth Circuit granted Plaintiff's TRO on June 3, 2002 prohibiting Defendant from:

> 1. Giving effect to the termination of Plaintiff's employment effective May 31, 2002 pursuant to the letter of April 26, 2002, issued by Defendant George Freitas.
> 2. Processing separation or termination of employment paperwork as to Plaintiff to take effect on May 31, 2002.
> 3. Preventing Plaintiff from continuing her employment as Private Secretary.
> 4. Denying Plaintiff any and all benefits and entitlements, including salary, sick leave, disability, worker's compensation and retirement benefits accruing to Plaintiff as Private Secretary.

Tokashiki v. Freitas et al., Civ. No. 02-1-0086, at *3 (Cir. Ct. Haw. Jun. 3, 2002).

After April 26, 2002, Plaintiff continued to work for the Police Commission. See Tokashiki Decl. at ¶¶ 5-7, 17. Plaintiff alleges that in November of 2002, when the police department moved to a new facility, no work space was provided for her. Id. at ¶ 12. She says that the Assistant Chief altered a library space for her workspace, which did not have wiring for a computer for several months or a desk phone. Id. Plaintiff also alleges that Defendant assigned her to do the A&T Clerk's work, which Plaintiff claims interfered with ability to do her work for the Police Commission. Id. at ¶¶ 13-14.

On December 6, 2002, Plaintiff stopped physically reporting to work. See Def. Exh. "M". Plaintiff claims she was no longer able to work under the conditions she had been working and took 19 days of vacation. See Tokashiki Decl. at ¶ 16.

Plaintiff states that she continued to do Police Commission work from home until the Commission removed her as their Secretary in February of 2003. Id. at ¶ 17. Defendant produced a letter written to Defendant's Counsel from the Deputy County Attorney for the County of Kauai on March 3, 2003, informing Defendant's counsel that Plaintiff was removed as Secretary to the Commission because of the public release of Police Commission documents pursuant to her federal case. See Def. Exh. "T". The same letter extended Plaintiff an at-will

6

position with the ADA office at her current salary.  Id.

On June 17, 2003, the State Circuit Court granted Defendant's Partial Motion for Summary Judgment as to Plaintiff's State Court Complaint, and effectively lifted the TRO.  See Chang Decl. ¶¶ 5-6; Tokashiki Decl. at ¶ 19; Pl. Exh "G".

Until May 10, 2004, Plaintiff drew on her accrued sick leave to supplement her Total Temporary Disability payments to maintain her monthly salary at 100%. See Def. Exhs. "N", "O". The parties agree that Plaintiff continued to receive pay until May 10, 2004, although they disagree about whether the source of income was worker's compensation or salary because of continued employment with the County.  See Tokashiki Decl. at ¶¶ 20-21; Pl. Exh. "A"; Def. CSF at p. 5.  Defendant claims that from January 7, 2002 to May 10, 2004, Plaintiff was not subject to any decrease in pay and continued to receive the benefits of the County's health plan. See Def. Exh. "T" at ¶ 9.  Defendant also claims that Plaintiff received a pay raise on July 1, 2002. Id. at ¶ 14.

On May 10, 2004, Plaintiff was terminated from her employment with the County of Kauai by Mayor Bryan J. Baptiste. See Def. Exh. "Q".

### STANDARD OF REVIEW

I.  **Motion for Summary Judgment**

The purpose of summary judgment is to identify and

7

dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of America National Trust & Savings Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal citation omitted).[3] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court

---

[3] Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' International Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

8

as to the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323; <u>Miller v. Glenn Miller Productions</u>, 454 F.3d 975, 987 (9th Cir. 2006).  The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex</u>, 477 U.S. at 325.[4]

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  <u>See</u> <u>Celotex</u>, 477 U.S. 323; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>California Architecture Building Products, Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).[5]  The nonmoving party must instead set forth "significant probative evidence" in support of its position.  <u>T.W. Electrical Service, Inc. v. Pacific Electrical</u>

---

[4]When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  <u>Miller</u>, 454 F.3d at 987 (quoting <u>C.A.R. Transportation Brokerage Co. v. Darden Restaurants, Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party.  <u>Miller</u>, 454 F.3d at 987.

[5]Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see</u> <u>also</u> <u>T.W. Electrical Service</u>, 809 F.2d 626, 630 (9th Cir. 1987).

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Electrical Service, 809 F.2d at 630-31.[6] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986).

## DISCUSSION

Defendant Freitas moves for summary judgment of Plaintiff Tokashiki's sole remaining claim that Defendant violated her right to freedom of speech under the First and Fourteenth Amendments of the United States Constitution.

To state a claim against a government employer for violation of the First Amendment, an employee must show "(1) that he or she engaged in protected speech; (2) that the government took 'adverse employment action'; and (3) that the speech was a 'substantial and motivating factor' for the adverse employment

---

[6] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Bator v. State of Hawai`i, 39 F.3d 1021, 1026 (9th Cir. 1994).

10

action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003)(citations omitted).

Once a plaintiff establishes the prima facie case, "the burden shifts to the public employer to demonstrate either that, under the balancing test established by [Pickering v. Board of Education, 391 U.S. 563, 568 (1968)], its legitimate administrative interests outweighed [the plaintiff's] First Amendment rights or that, under the mixed motive analysis established by [Mt. Healthy City School District v. Doyle, 429 U.S. 274, 287 (1977)], it would have reached the same decision even in the absence of the plaintiff's protected conduct." Roe v. City of San Diego, 356 F.3d 1108, 1112 (9th Cir. 2004)(citing Board of County Commissioners v. Umbehr, 518 U.S. 668, 675-76 (1996); Ulrich v. City and County of San Francisco, 308 F.3d 968, 976-77 (9th Cir. 2002)(citations omitted).

At the hearing, Defendant withdrew from his Motion the issue of whether the reassignment of Plaintiff constituted adverse employment action. Thus, this issue is not before the Court in this Motion for Summary Judgment. Furthermore, Defendant's counsel conceded that for the purposes of the summary judgment motion, Plaintiff can make a cognizable claim that Freitas's April 26, 2002 letter attempting to terminate her could be construed as adverse employment action. Defendant reserves the right to argue at trial that questions of fact remain as to whether the Defendant's actions were adverse employment actions

11

and that neither the reassignment nor alleged termination was retaliatory. Finally, Defendant asked the Court to preclude the jury from considering damages that may flow from the termination of Plaintiff on May 10, 2004 by letter from Mayor Baptiste.

**I.  Law of the Case**

Plaintiff argues that the "law of the case" doctrine applies, and the Court should abide by its previous determination that the termination of the Plaintiff was adverse employment action.

"Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." U.S. v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (internal quotations and citations omitted). The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion. Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983). "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." Alexander, 106 F.3d at 876 (internal quotations omitted). For the law of the case doctrine to apply, "the issue

in question must have been decided explicitly or by necessary implication in [the] previous disposition." Hydrick v. Hunter, 466 F.3d 676, 687-88 (9th Cir. 2006) (quoting United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000)).

In the Order of March 9, 2004, the Court found, "under the Ninth Circuit's 'reasonably likely to deter' test, Defendant Freitas' transfer and subsequent dismissal of Plaintiff are each adverse employment actions for the purposes of this case. Accordingly, the Court finds that Plaintiff satisfies the second element of her prima facie case." Tokashiki v. Freitas, Civ. No. 03-00065, slip op. at 31 (D. Haw. Mar. 9, 2004)(internal citation omitted).

One reason the law of the case does not apply to the issue of Plaintiff's termination claim is because new evidence is before the Court in the instant Motion. The Court has discretion to depart from the law of the case where evidence on remand is substantially different from the earlier decision in the case. See Alexander, 106 F.3d at 876. Here, Defendant Freitas argues that only after he filed his previous motion did he become aware that Plaintiff was continuing to receive compensation from the County of Kauai until May of 2004. Defendant asserts that he was misled by Plaintiff's pleadings and allegations into believing Plaintiff had been terminated at the time she filed her federal complaint. See Defendant's Memorandum in Support for Motion for Summary Judgment at p. 7 n.5, p. 13 n.6. These facts are

13

probative of whether in fact Plaintiff was terminated as she originally alleged and, in turn, whether the termination was adverse employment action for the purposes of a First Amendment retaliation claim. The evidence before the Court for this Motion is substantially different from Defendant's first Motion for Summary Judgment. The Court declines to rely upon the March 9, 2004 finding that Plaintiff has established adverse employment action as law of the case.[7]

## II. Adverse Employment Action

In the Ninth Circuit, the test for whether an employment action violates an individual's rights in a First Amendment retaliation case is whether the action is "reasonably likely to deter employees from engaging in protected activity." Coszalter, 320 F.3d at 975 (quoting Moore v. California Institute of Technology Jet Propulsion Laboratory, 275 F.3d 838, 847 (9th Cir. 2002). The Ninth Circuit takes a broad view of what may constitute adverse employment action:

> The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. The goal is to prevent, or redress, actions by a government employer that

---

[7] Similarly, the Ninth Circuit's decision affirming the Court's March 9, 2004 denial of summary judgment is not law of the case with regard to the termination issue within Tokashiki's First Amendment claim, as the aforesaid evidence was not presented to it. Thus, the Ninth Circuit also was unaware of Plaintiff's continued work for the Police Commission or compensation from the County. Because the evidence is substantially different at this stage regarding whether and when termination occurred, the law of the case doctrine is inapplicable.

14

> "chill the exercise of protected" First Amendment rights.
> Various kinds of employment actions may have an
> impermissible chilling effect. Depending on the
> circumstances, even minor acts of retaliation can infringe
> on an employee's First Amendment rights . . . To constitute
> an adverse employment action, a government act of
> retaliation need not be severe and it need not be of a
> certain kind. Nor does it matter whether an act of
> retaliation is in the form of the removal of a benefit or
> the imposition of a burden.

Id. at 974 -975 (internal citation omitted)(quoting Rutan v. Republican Party, 497 U.S. 62, 73 (1990)).

For the purposes of his Motion for Summary Judgment, Defendant concedes that Plaintiff can assert a claim that she suffered adverse employment action regarding Defendant's attempt to terminate her, but Defendant makes the more limited argument that he cannot be held liable for any damages resulting from the May 10, 2004 termination by the Mayor.

## A. Attempted Termination on April 26, 2002

Defendant Freitas concedes, for the purposes of the summary judgment motion, that Plaintiff has a cognizable claim that Freitas's actions, including the letter dated April 26, 2002, attempting to terminate Plaintiff Tokashiki from her position as Private Secretary may constitute adverse employment action.  Summary Judgment as to Plaintiff's First Amendment claim is accordingly denied.

## B. Termination on May 10, 2004

Defendant Freitas asks the Court to preclude the jury from considering any damages that may flow from the May 10, 2004

termination of the Plaintiff because Plaintiff has not established a causal nexus between Freitas's actions in 2002 and the termination by letter from Mayor Baptiste in May of 2004.

Plaintiff Tokashiki argues that the May 10, 2004 termination by Mayor Baptiste simply effectuated the actual termination by Freitas in April of 2002.  First, Plaintiff argues that Defendant should not be able to benefit from the fact that Tokashiki was able to get a TRO in 2002 that prevented Defendant from giving effect to the April 26, 2002 termination letter. Plaintiff points to a County of Kauai personnel record reflecting Freitas's April 26, 2002 termination of Tokashiki that was signed and dated on June 10, 2002, after the TRO was issued. See Pl. Exh. "L".  In another employment record dated the same day, a reference to the TRO was added. See Pl. Exh. "M".  Plaintiff argues that once the TRO was lifted in June of 2003, the April 26, 2002 termination could be effectuated, but the County records failed to note that the TRO had been abolished.  This oversight was addressed when Mayor Baptiste sent the letter terminating Plaintiff on May 10, 2004.

Plaintiff further argues that when Defendant terminated her from the position of Private Secretary to the Chief, she was also terminated as Police Commission Secretary, so she was never under the authority of the Mayor.  Plaintiff points to a letter from the County Attorney that states, "The Commission's secretary has historically been the Chief of Police's personal secretary,

and providing secretarial services to the Commission has historically been one of the personal secretary's duties. . . We are unaware that Ms. Tokashiki was answerable to the commission's investigators, this office, and the Office of the Mayor." See Pl. Exh. "N".  Thus, Plaintiff concludes, the Mayor's termination letter to Plaintiff on May 10, 2004, was simply a ministerial action that gave effect to the earlier termination by Freitas.

Finally, material issues of fact remain as to Plaintiff's alleged termination by the Police Commission in February of 2003.  Notwithstanding Plaintiff's aforecited assertion that she was terminated by Defendant's letter of April 26, 2002, in her opposition Plaintiff says that she was terminated by the Police Commission as its Secretary in February 2003.  See Pl. Opposition at p. 4. Defendant produces a letter from the Police Commission dated March 3, 2003 stating that she was terminated from her position because of the public release of certain Commission documents as exhibits to the action in this Court.  See Def. Exh. "S".  It is unclear what effect the alleged termination from her employment by the Police Commission in 2003 has on both parties' arguments as to when and by whose authority Plaintiff's ultimate termination was effectuated.

The Court concludes that it is up to the jury as the factfinder to decide whether Defendant Freitas caused Plaintiff Tokashiki's termination or whether he only unsuccessfully attempted to terminate her.  If the jury finds the latter to be

17

the case, then Plaintiff is not entitled to any damages resulting from her termination on May 10, 2004.[8]

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion for Summary Judgment on Plaintiff's First Amendment Claim and DENIES Defendant's request that the Court preclude the jury from considering the May 10, 2004 termination letter for the purposes of assessing damages.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 19, 2007.



_____
Alan C. Kay
Sr. United States District Judge

TOKASHIKI V. FREITAS, Civ. No. 03-00065 ACK-LEK, ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

---

[8] The Court notes that Defendant Freitas retired as Chief of Police in October of 2003, before Plaintiff Tokashiki was terminated by letter from the Mayor in 2004, and that neither the Mayor nor the County of Kauai is a party Defendant in this case.

18